# United States District Court

### FOR THE
### NORTHERN DISTRICT OF CALIFORNIA

### VENUE: SAN FRANCISCO

FILED

2014 JUN 26  A 11: 46

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

---

## UNITED STATES OF AMERICA,

## V.

## YURI SIDORENKO,
## ALEXANDER VASSILIEV,
## MAURICIO SICILIANO

# CR  14  341  CRB

### DEFENDANT(S).

---

# INDICTMENT

18 U.S.C. § 1349 – Conspiracy to Commit Honest Services Wire Fraud;
18 U.S.C. §§ 1343 and 1346 – Honest Services and Wire Fraud;
18 U.S.C. § 371 – Conspiracy to Solicit and Give Bribes Involving a Federal Program;
18 U.S.C. § 666(a)(1)(B) – Soliciting Bribes Involving Federal Program;
18 U.S.C. § 666(a)(2) – Giving Bribes Involving a Federal Program;
18 U.S.C. § 2 – Aiding and Abetting

---

A true bill.

_Nancy J. Peterson_
Foreman

Filed in open court this _26th_ day of

_June, 2014_.

_____
Clerk

Bail, $ _no bail arrest_    warrants as
to all defendants

3 - MJ12

### Nathanael Cousins
### United States Magistrate Judge

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT ☐ INFORMATION ☑ INDICTMENT
☐ SUPERSEDING

**Name of District Court, and/or Judge/Magistrate Location**
NORTHERN DISTRICT OF CALIFORNIA

FILED

─ OFFENSE CHARGED ─

See attached

☐ Petty
☐ Minor
☐ Misde-
meanor
☑ Felony

PENALTY:
See attached

BY COURT ORDER

─ DEFENDANT - U.S. ─

JUN 26 2014

► YURI SIDORENKO

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

DISTRICT COURT NUMBER

CR 14 341

─ PROCEEDING ─

**Name of Complaintant Agency, or Person (&Title, if any)**
SA K.S. Bagchi, Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrP 20, 21 or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
  ☐ U.S. Att'y ☐ Defense

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

SHOW
DOCKET NO.

MAGISTRATE
CASE NO.

**Name and Office of Person**
Furnishing Information on Melinda Haag
THIS FORM
☑ U.S. Att'y ☐ Other U.S. Agency

**Name of Asst. U.S. Att'y**
(if assigned) W.S. Wilson Leung

─ DEFENDANT ─

CRB

**IS NOT IN CUSTODY**
1) ☑ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges
   } ☐ Fed'l ☐ State

If answer to (6) is "Yes", show name of institution

Has detainer been filed? ☐ Yes ☐ No } If "Yes" give date filed

DATE OF ARREST ► _____ Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED ► _____ Month/Day/Year
TO U.S. CUSTODY

☐ This report amends AO 257 previously submitted

─ ADDITIONAL INFORMATION OR COMMENTS ─

PROCESS:
☐ SUMMONS ☐ NO PROCESS* ☑ WARRANT  Bail Amount: _____

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance  *Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment
Defendant Address:

Date/Time: _____

Before Judge: _____

Comments:

United States v. Yuri Sidorenko, Alexander Vassiliev, and Mauricio Siciliano
Penalty Sheet (continued)

Count One (Conspiracy to commit honest services wire fraud, 18 U.S.C. §§ 1349, 1343 & 1346)

| | |
|---|---|
| Maximum term of imprisonment: | 20 years |
| Maximum term of supervised release: | 3 years |
| Maximum fine: | Greatest of $250,000 or 2x gain/loss |
| Mandatory special assessment: | $100 |

Count Two (Honest services wire fraud, 18 U.S.C. §§ 1343, 1346 & 2)

| | |
|---|---|
| Maximum term of imprisonment: | 20 years |
| Maximum term of supervised release: | 3 years |
| Maximum fine: | Greatest of $250,000 or 2x gain/loss |
| Mandatory special assessment: | $100 |

Count Three (Conspiracy to solicit and to give bribes involving federal program, 18 U.S.C. §§ 371, 666(a)(1)(B) & 666(a)(2))

| | |
|---|---|
| Maximum term of imprisonment: | 5 years |
| Maximum term of supervised release: | 3 years |
| Maximum fine: | Greatest of $250,000 or 2x gain/loss |
| Mandatory special assessment: | $100 |

Count Four (Soliciting bribes involving federal program, 18 U.S.C. §§ 666(a)(1)(B) & 2)

| | |
|---|---|
| Maximum term of imprisonment: | 10 years |
| Maximum term of supervised release: | 3 years |
| Maximum fine: | Greatest of $250,000 or 2x gain/loss |
| Mandatory special assessment: | $100 |

Count Five (Giving bribes involving federal program, 18 U.S.C. §§ 666(a)(2) & 2)

| | |
|---|---|
| Maximum term of imprisonment: | 10 years |
| Maximum term of supervised release: | 3 years |
| Maximum fine: | Greatest of $250,000 or 2x gain/loss |
| Mandatory special assessment: | $100 |

| | |
|---|---|
| Total potential aggregate term of imprisonment: | 65 years |

AO 257 (Rev. 5/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☑ INDICTMENT
    ☐ SUPERSEDING

---OFFENSE CHARGED---

See attached

☐ Petty
☐ Minor
☐ Misde-meanor
☑ Felony

PENALTY:
See attached

**Name of District Court, and/or Judge/Magistrate Location**
NORTHERN DISTRICT OF CALIFORNIA

*FILED*

DEFENDANT - U.S.

*JUN 26 2014*

▶ ALEXANDER VASSILIEV

*RICHARD W. WIEKING*
*CLERK, U.S. DISTRICT COURT*
*NORTHERN DISTRICT OF CALIFORNIA*

DISTRICT COURT NUMBER

CR  14  341

*CRB*

---PROCEEDING---

**Name of Complainant Agency, or Person (&Title, if any)**
SA K.S. Bagchi, Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court ·

☐ this person/proceeding is transferred from another district per (circle one) FRCrP 20, 21 or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. Att'y  ☐ Defense

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

SHOW DOCKET NO.

MAGISTRATE CASE NO.

**Name and Office of Person Furnishing Information on THIS FORM**  Melinda Haag
☑ U.S. Att'y  ☐ Other U.S. Agency

**Name of Asst. U.S. Att'y (if assigned)**  W.S. Wilson Leung

---DEFENDANT---

IS *NOT* IN CUSTODY
1) ☑ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

IS IN CUSTODY
4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges     } ☐ Fed'l  ☐ State

If answer to (6) is "Yes", show name of institution

Has detainer been filed?  ☐ Yes  ☐ No   } If "Yes" give date filed

DATE OF ARREST ▶   Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶   Month/Day/Year

☐ This report amends AO 257 previously submitted

---ADDITIONAL INFORMATION OR COMMENTS---

PROCESS:
☐ SUMMONS  ☐ NO PROCESS*  ☑ WARRANT   Bail Amount:

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance

Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment*

Date/Time:

Before Judge:

Comments:

United States v. Yuri Sidorenko, Alexander Vassiliev, and Mauricio Siciliano
Penalty Sheet (continued)

Count One (Conspiracy to commit honest services wire fraud, 18 U.S.C. §§ 1349, 1343 & 1346)
Maximum term of imprisonment:                20 years
Maximum term of supervised release:          3 years
Maximum fine:                                Greatest of $250,000 or 2x gain/loss
Mandatory special assessment:                $100

Count Two (Honest services wire fraud, 18 U.S.C. §§ 1343, 1346 & 2)
Maximum term of imprisonment:                20 years
Maximum term of supervised release:          3 years
Maximum fine:                                Greatest of $250,000 or 2x gain/loss
Mandatory special assessment:                $100

Count Three (Conspiracy to solicit and give bribes involving federal program, 18 U.S.C. §§ 371, 666(a)(1)(B) & 666(a)(2))
Maximum term of imprisonment:                5 years
Maximum term of supervised release:          3 years
Maximum fine:                                Greatest of $250,000 or 2x gain/loss
Mandatory special assessment:                $100

Count Four (Soliciting bribes involving federal program, 18 U.S.C. §§ 666(a)(1)(B) & 2)
Maximum term of imprisonment:                10 years
Maximum term of supervised release:          3 years
Maximum fine:                                Greatest of $250,000 or 2x gain/loss
Mandatory special assessment:                $100

Count Five (Giving bribes involving federal program, 18 U.S.C. §§ 666(a)(2) & 2)
Maximum term of imprisonment:                10 years
Maximum term of supervised release:          3 years
Maximum fine:                                Greatest of $250,000 or 2x gain/loss
Mandatory special assessment:                $100


Total potential aggregate term of imprisonment:   65 years

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT ☐ INFORMATION ☑ INDICTMENT
☐ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA

*FILED*

### OFFENSE CHARGED

See attached

☐ Petty
☐ Minor
☐ Misde-meanor
☑ Felony

PENALTY:
See attached

───── DEFENDANT - U.S. ─────

▶ MAURICIO SICILIANO

JUN 26 2014

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

DISTRICT COURT NUMBER

CR 14 341

CRB

### PROCEEDING

Name of Complainant Agency, or Person (&Title, if any)
SA K.S. Bagchi, Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrP 20, 21 or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. Att'y ☐ Defense

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

MAGISTRATE CASE NO.

Name and Office of Person
Furnishing Information on
THIS FORM
Melinda Haag
☑ U.S. Att'y ☐ Other U.S. Agency

Name of Asst. U.S. Att'y
(if assigned)
W.S. Wilson Leung

───── DEFENDANT ─────

**IS NOT IN CUSTODY**

1) ☑ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges } ☐ Fed'l ☐ State

If answer to (6) is "Yes", show name of institution

Has detainer been filed?
☐ Yes
☐ No
} If "Yes" give date filed

Month/Day/Year

DATE OF ARREST ▶

Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶

Month/Day/Year

☐ This report amends AO 257 previously submitted

───── ADDITIONAL INFORMATION OR COMMENTS ─────

PROCESS:
☐ SUMMONS ☐ NO PROCESS* ☑ WARRANT Bail Amount:

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance
Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:

Before Judge:

Comments:

United States v. Yuri Sidorenko, Alexander Vassiliev, and Mauricio Siciliano
Penalty Sheet (continued)

Count One (Conspiracy to commit honest services wire fraud, 18 U.S.C. §§ 1349, 1343 & 1346)

| | |
|---|---|
| Maximum term of imprisonment: | 20 years |
| Maximum term of supervised release: | 3 years |
| Maximum fine: | Greatest of $250,000 or 2x gain/loss |
| Mandatory special assessment: | $100 |

Count Two (Honest services wire fraud, 18 U.S.C. §§ 1343, 1346 & 2)

| | |
|---|---|
| Maximum term of imprisonment: | 20 years |
| Maximum term of supervised release: | 3 years |
| Maximum fine: | Greatest of $250,000 or 2x gain/loss |
| Mandatory special assessment: | $100 |

Count Three (Conspiracy to solicit and to give bribes involving federal program, 18 U.S.C. §§ 371, 666(a)(1)(B) & 666(a)(2))

| | |
|---|---|
| Maximum term of imprisonment: | 5 years |
| Maximum term of supervised release: | 3 years |
| Maximum fine: | Greatest of $250,000 or 2x gain/loss |
| Mandatory special assessment: | $100 |

Count Four (Soliciting bribes involving federal program, 18 U.S.C. §§ 666(a)(1)(B) & 2)

| | |
|---|---|
| Maximum term of imprisonment: | 10 years |
| Maximum term of supervised release: | 3 years |
| Maximum fine: | Greatest of $250,000 or 2x gain/loss |
| Mandatory special assessment: | $100 |

Count Five (Giving bribes involving federal program, 18 U.S.C. §§ 666(a)(2) & 2)

| | |
|---|---|
| Maximum term of imprisonment: | 10 years |
| Maximum term of supervised release: | 3 years |
| Maximum fine: | Greatest of $250,000 or 2x gain/loss |
| Mandatory special assessment: | $100 |

| | |
|---|---|
| Total potential aggregate term of imprisonment: | 65 years |



1  MELINDA HAAG (CABN 132612)
2  United States Attorney

3

4

5

6

7

8

9  UNITED STATES DISTRICT COURT

10  NORTHERN DISTRICT OF CALIFORNIA

11  SAN FRANCISCO DIVISION

12

13  UNITED STATES OF AMERICA        )
                                   )   No.
14       v.                        )
                                   )   VIOLATIONS: 18 U.S.C. § 1349 – Conspiracy
15  YURI SIDORENKO,                )   to Commit Honest Services Wire Fraud; 18 U.S.C.
    ALEXANDER VASSILIEV, and       )   §§ 1343 and 1346 – Honest Services Wire Fraud;
16  MAURICIO SICILIANO,            )   18 U.S.C. § 371 – Conspiracy to Solicit and to Give
                                   )   Bribes Involving a Federal Program; 18 U.S.C. §
17       Defendants.               )   666(a)(1)(B) – Soliciting Bribes Involving a Federal
                                   )   Program; 18 U.S.C. § 666(a)(2) – Giving Bribes
18                                 )   Involving a Federal Program; 18 U.S.C. § 2 –
                                   )   Aiding and Abetting; 18 U.S.C. § 3238 – Venue
19  ─────────────────────────────  )

20

21

22                      I N D I C T M E N T

23  The Grand Jury charges:

24  <u>Introduction</u>

25       *The International Civil Aviation Organization*

26       1.       At all times relevant to this Indictment, the International Civil Aviation Organization

27  ("ICAO") has been a United Nations specialized agency that was created in 1944 by the signing of the

28  Convention on International Civil Aviation.  The United States has been a member of ICAO since

                                        1

1   ICAO's formation.

2       2.    At all times relevant to this Indictment, ICAO was responsible for, among other things,

3   standardizing machine-readable passports, including biometric passports. The standards that ICAO

4   established and disseminated were used in determining which features would be used in passports by a

5   variety of countries, including the United States. ICAO also generated and assigned identifying codes to

6   each country and entity that issued an ICAO-compliant passport. These three-letter identifying codes

7   were incorporated into a machine-readable serial number in each passport so that the passport's issuing

8   authority could be readily identified. This three-letter code was a mandatory component of the Machine

9   Readable Zone standard established by ICAO. Because of ICAO's role in establishing international

10  standards for machine-readable and biometric passports, having the approval of ICAO, either express or

11  implied, was beneficial to businesses engaged in the design and manufacturing of machine-readable and

12  biometric passports.

13      3.    At all times relevant to this Indictment, the United States was a member of ICAO and

14  provided support to ICAO by, among other things, annual monetary contributions. The United States

15  Government has given ICAO  more than $10,000 in each one-year period. Between approximately 2005

16  and 2010, ICAO's budget was at least approximately $64,669,000, and during this period, the United

17  States's contributions to ICAO constituted approximately 25% of ICAO's annual budget. The United

18  States's contributions to ICAO are authorized under Title 22, United States Code, Section 2673.

19      *The EDAPS Consortium*

20      4.    At all times relevant to this Indictment, the EDAPS Consortium ("EDAPS") was a

21  Ukrainian conglomerate of various companies that manufactured and supplied a variety of identification

22  and security products, including passports, driver's licenses, airline crew badges, bank cards, tax stamps,

23  voting ballots, negotiable instruments, and holographic embossing. At all times relevant to this

24  Indictment, EDAPS attempted to establish itself and expand globally, including in the United States

25  market, as a manufacturer of security and identity products. Among other ventures during the time

26  period of this Indictment, EDAPS attempted to produce an electronic passport ("e-passport") for the

27  International Criminal Police Organization.

28  //

*The International Criminal Police Organization*

5.     At all times relevant to this Indictment, the International Criminal Police Organization ("INTERPOL") was an international organization founded in 1914, the mission of which was to facilitate law enforcement coordination and cooperation between member countries. As of 2010, INTERPOL had approximately 190 member countries.  Each INTERPOL member country had a National Central Bureau that served as a coordinating center for that country's interactions with INTERPOL.

*The Defendants*

6.     At all times relevant to this Indictment, the defendant YURI SIDORENKO was the Chairman of EDAPS's Advisory Council and effectively controlled EDAPS.  SIDORENKO was a citizen of Ukraine, Switzerland, and St. Kitts & Nevis, but primarily resided in Dubai in the United Arab Emirates.

7.     At all times relevant to this Indictment, the defendant ALEXANDER VASSILIEV was SIDORENKO's nephew and served as EDAPS's Chairman of the Board.  Like SIDORENKO, VASSILIEV was a citizen of Ukraine and St. Kitts & Nevis, but primarily resided in Dubai in the United Arab Emirates.

8.     At all times relevant to this Indictment, the defendant MAURICIO SICILIANO was an executive at ICAO, and was specifically assigned to work in ICAO's Machine Readable Travel Documents ("MRTD") Programme.  The MRTD Progamme was responsible for setting standards for, and for standardizing, machine-readable passports.  SICILIANO was a Venezuelan national but primarily resided in Montreal, Canada, where ICAO is headquartered.  SICILIANO also held a Canadian passport.

*ICAO's Right to Honest Services*

9.     At all times relevant to this Indictment, ICAO had an intangible right to the honest services of its executive employees.  As an executive of ICAO's MRTD Programme, the defendant, MAURICIO SICILIANO, owed ICAO a duty to, among other things, (1) refrain from receiving illegal payments and other things of value that improperly affected the performance of official duties and coaxed favorable official action and inaction, and (2) refrain from using his office and knowledge gained

3

1   from his official functions for the private gain of himself and any third parties.

2       *Scheme to Defraud and to Solicit and Give Bribes*

3       10.     At all times relevant to this Indictment, the defendants YURI SIDORENKO and

4   ALEXANDER VASSILIEV provided money and other things of value to the defendant MAURICIO

5   SICILIANO so that SICILIANO would use his official position as an executive of ICAO to benefit

6   EDAPS's business as well as SIDORENKO and VASSILIEV personally.

7       11.     MAURICIO SICILIANO sought to benefit EDAPS was by introducing and publicizing

8   YURI SIDORENKO, ALEXANDER VASSILIEV, and EDAPS to officials of governments and non-

9   governmental entities who were potential clients and business contacts for EDAPS, as well as by

10   arranging for EDAPS to appear at ICAO conferences as a sponsor in order to bolster EDAPS's

11   international reputation and marketing efforts.  For instance, SICILIANO endorsed EDAPS to the

12   Organization for Security and Cooperation in Europe ("OSCE"), an inter-governmental organization

13   charged with coordinating security among member states.  SICILIANO recommended that an OSCE

14   official contact EDAPS for assistance with one of the OSCE's projects, as evinced by an e-mail message

15   SICILIANO sent to the OSCE official on or about October 12, 2007, which SICILIANO subsequently

16   forwarded to VASSILIEV: "As per the presentation on financing, I will not feel comfortable doing

17   it.  However, I reading [*sic*] recently that the EU [European Community] has a funding programme for

18   financing border control projects related to our objectives. . . .You may want to include them for this. . .

19   .If not, you may want to contact the EDAPS group ([the Unindicted Co-Conspirator]).  They were

20   sponsors during our Symposium and were the only company that mentioned anything related to

21   financing MRTD projects."

22       12.     YURI SIDORENKO and ALEXANDER VASSILIEV also sought ICAO's endorsement

23   for EDAPS and its products in order to expand EDAPS's business.  One project of particular importance

24   to SIDORENKO and VASSILIEV was the production of an e-passport for INTERPOL.  In connection

25   with this project, on or about January 15, 2009, VASSILIEV sent to an INTERPOL official in charge of

26   conducting due diligence on companies seeking to do business with INTERPOL a statement from

27   MAURICIO SICILIANO expressing support for EDAPS.

28       13.     YURI SIDORENKO and ALEXANDER VASSILIEV also sought from MAURICIO

SICILIANO a letter from ICAO certifying that Ukraine's passport – which was produced by EDAPS – was ICAO-compliant in order to bolster EDAPS's reputation.  In connection with this request, SICILIANO sent an e-mail message to VASSILIEV on or about October 19, 2009, stating: "I am reviewing the letter you left me requesting a letter 'certifying' that the Ukraine ePassport is ICAO compliant.  As you know, ICAO does not certify passports or processes.  However, I am trying to find a wording that would be loose, but good enough to serve your purposes.  Also, I am afraid that, if I pass it through my present chief, it would not be signed."  Approximately ten days later, SICILIANO forwarded to VASSILIEV an e-mail message from earlier that day that SICILIANO had written to an EDAPS employee explaining that a draft letter proposed by EDAPS was not suitable and needed revising:  "I had a look at it and it does not fully comply with ICAO format and content.  Also, it is not customary in ICAO to make reference to companies providing products and services.  Thus, we are trying to come up with a proper letter. . . ."

14.     In order to assist EDAPS with its INTERPOL e-passport project, MAURICIO SICILIANO worked to facilitate ICAO's assignment of the three-letter identifying code "XPO" to INTERPOL.  SICILIANO advised ALEXANDER VASSILIEV of his efforts in an e-mail message dated November 12, 2009, writing: "I think I found a way to fast track processing the issuance of the three letter code to INTERPOL. . . .With this, I can try to build a strong case, and it will probably [*sic*] very quickly.  However, this initiative will be fought and opposed by some TAG [Technical Advisory Group] members (such as the Canadian Delegation, as you may expect).  But, I am confident we can do this."

15.     MAURICIO SICILIANO also assisted ALEXANDER VASSILIEV's girlfriend with obtaining a visa to travel to Canada through ICAO's sponsorship.  On or about November 6, 2007, SICILIANO sent an e-mail message to VASSILIEV, stating: "Please send me the dates you and [Female1] will be in Canada, so I can request the visa."  Two days later, on or about November 8, 2007, SICILIANO sent another e-mail message to VASSILIEV, advising VASSILIEV: "We just faxed to the Canadian Consulate in Dubai [where VASSILIEV resided] the letter I am attaching here for getting the visa to your girlfriend."  The letter that was sent to the Canadian Consulate in Dubai referenced in SICILIANO's e-mail message was dated November 8, 2007, printed on ICAO letterhead, and signed by

1 SICILIANO, and requested a visa for VASSILIEV's girlfriend so that she could participate in an ICAO

2 event as a technical specialist.

3      16.    Similarly, MAURICIO SICILIANO also considered using his official position within

4 ICAO to provide a United Nations travel document to YURI SIDORENKO by hiring SIDORENKO as a

5 consultant for ICAO.  On November 8, 2007, SICILIANO wrote an e-mail message to VASSILIEV,

6 stating:

7
> Today I met with my colleagues in the Technical Cooperation Bureau
> who will be assisting me in preparing a proposal and a plan for the

8
> MRTD Training Strategy, as discussed with Yuri and yourself. . . .

9
> In this sense, and once the budget is approved and received from EDAPS

10
> to implement the training strategy, it seems I may have the possibility to
> "hire" Yuri (among other consultants) as an ICAO consultant and provide

11
> him with a Laisser Passer [a United Nations travel document] as he
> wishes.

12      17.    MAURICIO SICILIANO frequently demanded compensation from YURI SIDORENKO

13 and ALEXANDER VASSILIEV for his efforts on their behalf.  For instance, on or about November 8,

14 2007, SICILIANO sent an e-mail message to VASSILIEV seeking payment of "dues" via wire transfer

15 to a Swiss bank account, stating: "Finally, I will need to have access to my monthly dues from you

16 ASAP.  Last payment received was in September.  I am opening a Swiss account shortly where you may

17 wire the money."

18      18.    On or about January 3, 2010, MAURICIO SICILIANO sent an e-mail message to

19 ALEXANDER VASSILIEV advising VASSILIEV that YURI SIDORENKO and VASSILIEV owed

20 him three months of payments and suggesting two methods of payment:

21
> . . . I would not like to let too much time to go by between our

22
> meetings and exchanges.  The last time we let this happen, it turn out that
> we did not continue our marketing agreement and I was the one that really

23
> lost..  Thus, I would like to know if you or [the Unindicted Co-
> Conspirator] (whom I have not heard from since the last time we spoke

24
> over the phone) will be visiting me to get from you the update.  With
> January, 3 months are due.

25
> The other alternative is to use a Bank account I have in Switzerland.  In

26
> fact, I would prefer this alternative as we may be up to date every month
> (and not let too much time pass by between encounters), and I can keep

27
> the minimum balance I need to keep the account there.  Also, this will
> allow me to use the funds immediately.  We may also use this account

28
> for other business agreements as they will become available.

19.     On or about January 21, 2010, MAURICIO SICILIANO sent an e-mail message to ALEXNADER VASSILIEV, both referencing their scheme and seeking payment:

> I am very keen to talk to you on the different projects coming up, including Interpol ID e-card and receive the fruits our marketing agreement.  Regarding the latter, if it is impossible for you to meet with me in the coming weeks, I wonder if it is possible for you to leave the dues somewhere for me to pick up (ex. bank box, or other alternative), or to assign any of your employees ([Female2] or [Female3]) to provide me with the envelope.

20.     In or about October 2007, YURI SIDORENKO and ALEXANDER VASSILIEV also offered employment to SICILIANO's son as part of their scheme with SICILIANO.  SICILIANO agreed to this arrangement, but advised SIDORENKO and VASSILIEV in an e-mail message dated October 8, 2007 that

> . . . none of my family members know nor do I want them to ever know, about my deals with you. . . .
>
> [The son] is also very discreet. . . .
>
> I trust you and know that you will be taking care of him.  Otherwise, you would not have made him this offer.  But I cannot tell any of this to anyone.  This has to be seen as a good opportunity for him, based on his qualities. . . .I will prefer for [the son] not to be involved with travel documents business until the right time will come, and we will agree upon. It will not look good for any of us at this point.

21.     MAURICIO SICILIANO's son was unhappy with his employment by YURI SIDORENKO and ALEXANDER VASSILIEV and quit shortly after starting the job.  On or about November 15, 2007, SIDORENKO wrote an e-mail message to SICILIANO sent from VASSILIEV's e-mail account stating:

> First of all, I regret that such a misunderstanding has taken place with your son. . . .
>
> . . . please provide me with an invoice for the period [the son] spent working with our company.  This invoice will be paid immediately. . . .
>
> I can only assure you thta [sic] neither I, nor Alexander, nor any other member of my family, in no way offended [the son] at any time.  Hence, I suggest that we finish with this story and continue to go ahead with our plans and consider this story a misunderstanding. . . .
>
> Pleas [sic] confirm your consent to go ahead with the plans that we have discussed.

//

22.   In an e-mail message dated November 21, 2007, MAURICIO SICILIANO expressed his displeasure at his son's unhappiness and demanded compensation for his son, but also reaffirmed his commitment to the scheme between him, YURI SIDORENKO, and ALEXANDER VASSILIEV:

> He [the son] was to have a contract in writing that will include his job description indicating his position and functions, which you identified as "Back Manager". . . .
>
> When it comes to [the son's] job, he end [*sic*] up not performing functions of "Back Manager" as indicated.  Instead, he had to be available for performing functions as driver or something closer to been [*sic*] a personal butler. . . .
>
> Finally, when it comes to compensate [the son], I think this is something your company will have to fix directly with him.  No invoices, no paper trail.  And for everything he had lost because he accepted in good faith an offer that did not follow through, and to help him come back on his own in some way, I expect him to be substantially compensated.  I believe three months salary should be the right thing to do.
>
> As for the future plans, I will send you a fax, once this situation is satisfactorily resolved and behind us.

23.   Later on November 21, 2007, YURI SIDORENKO, using ALEXANDER VASSILIEV's e-mail account, responded, agreeing to compensate MAURICIO SICILIANO's son:  "I have read your email of 21 November.  I am expecting receipt of bank account information from [the son]."

<u>COUNT ONE</u>          (18 U.S.C. §§ 1349 and 3238 -- Conspiracy to Commit Honest Services Wire
                                        Fraud)

24.   Paragraphs 1 through 23 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

25.   From at least in or about 2005, up through and including in or about June 2010, in an offense begun and committed outside the jurisdiction of any particular State and district of the United States, the defendants,

YURI SIDORENKO,

ALEXANDER VASSILIEV, and

MAURICIO SICILIANO,

//

1  and others known and unknown, unlawfully, willfully, and knowingly combined, conspired,

2  confederated, and agreed together and with each other to commit honest services wire fraud, in

3  violation of Title 18, United States Code, Sections 1343 and 1346.

4        26.    It was a part and an object of the conspiracy that the defendants,

5                           · YURI SIDORENKO,

6                 ALEXANDER VASSILIEV, and

7                 MAURICIO SICILIANO,

8  and others known and unknown, unlawfully, willfully, and knowingly, having devised and intending to

9  devise a scheme and artifice to defraud, and to deprive SICILIANO's employer, ICAO, of its intangible

10  right to SICILIANO's honest services by means of false and fraudulent pretenses, would and did

11  transmit and cause to be transmitted by means of wire communications in interstate and foreign

12  commerce, writings, signs, signals, pictures, and sounds, including interstate and foreign e-mail

13  communications and interstate and foreign money wire transfers, for the purpose of executing such

14  scheme and artifice, in violation of Title 18, United States Code, Sections 1343 and 1346, to wit,

15  SIDORENKO, VASSILIEV, and SICILIANO agreed that SIDORENKO and VASSILIEV would

16  provide bribes in the form of money and other things of value to SICILIANO in exchange for

17  SICILIANO using his official position within ICAO to benefit SIDORENKO, VASSILIEV, and

18  EDAPS, and the defendants used e-mail communications and money wire transfers to facilitate their

19  scheme.

20        All in violation of Title 18, United States Code, Sections 1349 and 3238.

21  COUNT TWO        (18 U.S.C. §§ 1343, 1346, 2, and 3238 -- Honest Services Wire Fraud)

22        27.    Paragraphs 1 through 23 of this Indictment are realleged and incorporated by reference as

23  though fully set forth herein.

24        28.    From at least in or about 2005, up through and including in or about June 2010, in an

25  offense begun and committed outside the jurisdiction of any particular State and district of the United

26  States, the defendants,

27  //

28

1    YURI SIDORENKO,

2    ALEXANDER VASSILIEV, and

3    MAURICIO SICILIANO,

4    and others known and unknown, unlawfully, willfully, and knowingly, having devised and intending to

5    devise a scheme and artifice to defraud, and to deprive SICILIANO's employer, ICAO, of its intangible

6    right to SICILIANO's honest services by means of false and fraudulent pretenses, transmitted and

7    caused to be transmitted by means of wire communications in interstate and foreign commerce, writings,

8    signs, signals, pictures, and sounds, including interstate and foreign e-mail communications and

9    interstate and foreign money wire transfers, for the purpose of executing such scheme and artifice, to

10   wit, SIDORENKO and VASSILIEV provided bribes in the form of money and other things of value to

11   SICILIANO in exchange for SICILIANO using his official position within ICAO to benefit

12   SIDORENKO, VASSILIEV, and EDAPS, and the defendants used e-mail communications and money

13   wire transfers to facilitate their scheme.

14        All in violation of Title 18, United States Code, Sections 1343, 1346, 2, and 3238.

15   COUNT THREE        (18 U.S.C. §§ 371 and 3238 -- Conspiracy to Solicit and Give Bribes Involving a

16                       Federal Program)

17        29.    Paragraphs 1 through 23 of this Indictment are realleged and incorporated by reference as

18   though fully set forth herein.

19        30.    From at least in or about 2005, up through and including in or about June 2010, in an

20   offense begun and committed outside the jurisdiction of any particular State and district of the United

21   States,

22   YURI SIDORENKO,

23   ALEXANDER VASSILIEV, and

24   MAURICIO SICILIANO,

25   and others known and unknown, unlawfully, willfully, and knowingly combined, conspired,

26   confederated, and agreed together and with each other to solicit bribes involving a federal program, in

27   violation of Title 18, United States Code, Section 666(a)(1)(B), and to give bribes involving a federal

28   program, in violation of Title 18, United States Code, Section 666(a)(2).

31.   It was a part and an object of the conspiracy that the defendants,

YURI SIDORENKO,

ALEXANDER VASSILIEV, and

MAURICIO SICILIANO,

and SICILIANO being an agent of an organization, to wit, ICAO, unlawfully, willfully, and knowingly would and did corruptly solicit and demand for the benefit of a person and accept and agree to accept something of value from a person, intending to be influenced and rewarded in connection with such a business, transaction, and series of transactions of ICAO, involving something of value of $5,000 and more, while ICAO was in receipt of, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, in violation of Title 18, United States Code, Section 666(a)(1)(B), to wit, SIDORENKO, VASSILIEV, and SICILIANO agreed that SICILIANO would accept bribes in the form of money and other things of value from SIDORENKO and VASSILIEV in exchange for SICILIANO using his official position within ICAO to benefit SIDOREKNO, VASSILIEV, and EDAPS.

32.   It was further a part and an object of the conspiracy that the defendants,

YURI SIDORENKO,

ALEXANDER VASSILIEV, and

MAURICIO SICILIANO,

unlawfully, willfully, and knowingly would and did corruptly give, offer, and agree to give something of value to a person, with intent to influence and reward an agent of ICAO, to wit, SICILIANO, in connection with a business, transaction, and series of transactions of ICAO, involving something of value of $5,000 and more, while ICAO was in receipt of, in any one-year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, in violation of Title 18, United States Code, Section 666(a)(2), to wit, SIDORENKO, VASSILIEV, and SICILIANO agreed that SIDORENKO and VASSILIEV would give bribes in the form of money and other things of value to SICILIANO in exchange for SICILIANO using his official position within ICAO to benefit SIDOREKNO, VASSILIEV, and EDAPS.

//

1                                         Overt Acts

2        33.      In furtherance of the conspiracy and to effect the illegal objects thereof, the defendants,

3 YURI SIDORENKO, ALEXANDER VASSILIEV, and MAURICIO SICILIANO, committed the

4 following overt acts, among others:

5                a.        On or about November 21, 2007, SIDORENKO sent an e-mail message to

6 SICILIANO.

7                b.        In or about July 2009, in Montreal, Canada, SICILIANO received approximately

8 $3,000 from the Unindicted Co-Conspirator.

9                c.        On or about September 23, 2009, VASSILIEV sent an e-mail message to

10 SICILIANO.

11                d.        On or about January 25, 2010, SICILIANO sent an e-mail message to

12 VASSILIEV.

13                e.        On or about April 14, 2010, SICILIANO sent an e-mail message to VASSILIEV.

14                f.        On or about June 4, 2010, SICILIANO sent an e-mail message to VASSILIEV.

15        All in violation of Title 18, United States Code, Sections 371 and 3238.

16 <u>COUNT FOUR</u>            (18 U.S.C. §§ 666(a)(1)(B), 2, and 3238 – Soliciting Bribes Involving a Federal

17                                      Program)

18        34.      Paragraphs 1 through 23 of this Indictment are realleged and incorporated by reference as

19 though fully set forth herein.

20        35.      From at least in or about July 2009, up through and including in or about June 2010, in an

21 offense begun and committed outside the jurisdiction of any particular State and district of the United

22 States, the defendants,

23                                     YURI SIDORENKO,

24                            ALEXANDER VASSILIEV, and

25                              MAURICIO SICILIANO,

26 and SICILIANO being an agent of an organization, to wit, ICAO, unlawfully, willfully, and knowingly

27 corruptly solicited and demanded for the benefit of a person and accepted and agreed to accept

28 something of value from a person, intending to be influenced and rewarded in connection with such a

1   business, transaction, and series of transactions of ICAO, involving something of value of $5,000 and

2   more, while ICAO was in receipt of, in any one year period, benefits in excess of $10,000 under a

3   Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of

4   Federal assistance, to wit, SICILIANO solicited bribes from SIDORENKO and VASSILIEV, which

5   they paid in the form of money and other things of value to SICILIANO in exchange for SICILIANO

6   using his official position within ICAO to benefit SIDORENKO, VASSILIEV, and EDAPS.

7            All in violation of Title 18, United States Code, Sections 666(a)(1)(B), 2, and 3238.

8   COUNT FIVE              (18 U.S.C. §§ 666(a)(2), 2, and 3238 -- Giving Bribes Involving a Federal

9                           Program)

10           36.     Paragraphs 1 through 23 of this Indictment are realleged and incorporated by reference as

11  though fully set forth herein.

12           37.     In or about July 2009, in an offense begun and committed outside the jurisdiction of any

13  particular State and district of the United States, the defendants,

14                           YURI SIDORENKO,

15                      ALEXANDER VASSILIEV, and

16                       MAURICIO SICILIANO,

17  unlawfully, willfully, and knowingly corruptly gave, offered, and agreed to give something of value to a

18  person, with intent to influence and reward an agent of ICAO, to wit, SICILIANO, in connection with a

19  business, transaction, and series of transactions of ICAO, involving something of value of $5,000 and

20  more, while ICAO was in receipt of, in any one year period, benefits in excess of $10,000 under a

21  Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of

22  Federal assistance, to wit, SIDORENKO and VASSILIEV gave bribes in the form of money and other

23  //

24

25

26

27

28

1    things of value to SICILIANO in exchange for SICILIANO using his official position within ICAO to

2    benefit SIDOREKNO, VASSILIEV, and EDAPS.

3         All in violation of Title 18, United States Code, Sections 666(a)(2), 2, and 3238.

4

5    DATED:  June 26 , 2014                    A TRUE BILL

6

7                                             *Nancy J. Reterson*
                                             FOREPERSON

8

9    MELINDA HAAG
     United States Attorney

10

11   *J. Douglas Wilson*

12   J. DOUGLAS WILSON
     Chief, Criminal Division

13

14   (Approved as to form:  *W. S. Leung* )

15                         ARIANNA R. BERG
                           ACADIA L. SENESE

16                         W.S. WILSON LEUNG
                           Assistant United States Attorneys

17

18

19

20

21

22

23

24

25

26

27

28