BOERSCH SHAPIRO LLP
David W. Shapiro (State Bar No. 219265)
Dshapiro@boerschshapiro.com
Martha Boersch (State Bar No. 126569)
Mboersch@boerschshapiro.com
Lara Kollios (State Bar No. 235395)
Lkollios@boerschshapiro.com
235 Montgomery Street, Suite 835
San Francisco, CA 94104
Telephone: (415) 500-6640

Attorneys for Defendant
ALEXANDER VASSILIEV

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>YURI SIDORENKO, ALEXANDER VASSILIEV, and MAURICIO SICILIANO,<br><br>Defendants. | Case No. CR 14-00341 CRB<br><br>DEFENDANT ALEXANDER VASSILIEV'S MOTION TO DISMISS<br><br>Date:          April 15, 2015<br>Time:          2:00 pm<br>Courtroom:   Hon. Charles R. Breyer |

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

BACKGROUND AND ALLEGATIONS ................................................................................2

    I.      The Government's Venue Claim .........................................................................2

    II.    Factual Allegations .............................................................................................3

ARGUMENT ..........................................................................................................................3

    I.      BECAUSE THE CRIMINAL STATUTES CHARGED IN THE INDICTMENT DO NOT APPLY EXTRATERRITORIALLY, AND THE ALLEGED CONDUCT IS ENTIRELY FOREIGN, THE INDICTMENT FAILS TO ALLEGE AN OFFENSE ...3

          A.      Extraterritorial Application of Statutes After *Morrison* .......................4

          B.      The Wire Fraud Charges Fail to State an Offense ..............................5

               1.     The Wire Fraud Statute Does Not Apply Extraterritorially ..................5

               2.     The Wire Fraud Charges Are Based Entirely on Foreign Conduct ........7

          C.      The Bribery Charges Fail to State an Offense ....................................7

               1.     The Alleged Bribery Statute Does Not Apply Extraterritorially ...........8

               2.     The Bribery Allegations Are Based Solely on Foreign Conduct ...........9

    II.    THE INDICTMENT MUST BE DISMISSED BECAUSE THE DUE PROCESS CLAUSE REQUIRES A DOMESTIC NEXUS, AND NONE IS ALLEGED IN THE CHARGES ...................................................................................................9

    III.   BECAUSE THEY FAIL TO ALLEGE ESSENTIAL ELEMENTS OF THE OFFENSES, EACH COUNT MUST BE DISMISSED ...........................................11

          A.      Because the Wire Fraud Counts Fail to Allege a Specific Use of the Wires, the Wire Fraud Counts Fail to State an Offense and are Duplicitous .....................11

               1.     Failure to State an Offense ....................................................................12

               2.     Duplicity ...............................................................................................13

           B.      Because the Indictment Fails to Allege That the Organization Allegedly Influenced was the Organization That Received Federal Funding, the Bribery Charges Fail to State an Offense .................................................14

CONCLUSION ......................................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Badders v. United States*,
240 U.S. 391 (1916)..................................................................................12

*EEOC v. Arabian Am. Oil Co.* (*Aramco*),
499 U.S. 244 (1991)..............................................................................4, 6

*European Community v. RJR Nabisco, Inc.*,
764 F.3d 129 (2d Cir. 2014)..................................................................6, 8

*Fischer v. United States*,
529 U.S. 667 (2000)................................................................................16

*Foley Bros., Inc. v. Filardo*,
336 U.S. 281 (1949)..................................................................................4

*Keller Found./Case Found. v. Tracy*,
696 F.3d 835 (9th Cir. 2012)....................................................................5

*Kiobel v. Royal Dutch Petroleum Co.*,
133 S. Ct. 1659 (2013)..............................................................................5

*Loginovskaya v. Batratchenko*,
764 F.3d 266 (2d Cir. 2014).....................................................................5

*Morrison v. Nat'l Australia Bank Ltd.*,
561 U.S. 247 (2010)........................................................................ passim

*Rose v. Himely*,
8 U.S. (4 Cranch.) 241 (1808) (Marshall, C.J.) .......................................4

*Sabri v. United States*,
541 U.S. 600 (2004)................................................................................15

*Schmuck v. United States*,
489 U.S. 705 (1989)................................................................................12

*United States v. Abu-Shawish*,
507 F.3d 550 (7th Cir. 2007)..................................................................15

*United States v. Aikins*,
946 F.2d 608 (9th Cir. 1990)..................................................................11

*United States v. Boren*,
278 F.3d 911 (9th Cir. 2002)....................................................................2

*United States v. Bowman*,
260 U.S. 94 (1922)....................................................................................8

*United States v. Brown*,
727 F.3d 329 (5th Cir. 2013)..................................................................15

*United States v. Campbell*,
798 F. Supp. 2d 293 (D.D.C. 2011).....................................................8, 9

ALEXANDER VASSILIEV'S
MOTION TO DISMISS
Case No.: CR 14-00341 CRB

*United States v. Chao Fan Xu,*
  706 F.3d 965 (9th Cir. 2013) ...................................................................5, 9

*United States v. Cruzado–Laureano,*
  404 F.3d 470 (1st Cir. 2005) .......................................................................15

*United States v. Davis,*
  905 F.2d 245 (9th Cir. 1990) .......................................................................10

*United States v. Delano,*
  55 F.3d 720 (2d Cir. 1995) ...........................................................................15

*United States v. Du Bo,*
  186 F.3d 1177 (9th Cir. 1999) .....................................................................13

*United States v. Garlick,*
  240 F.3d 789 (9th Cir. 2001) ..................................................................12, 13

*United States v. Kazazz,*
  2014 WL 6679284 (9th Cir. 2014) ................................................................6

*United States v. Klimavicius–Viloria,*
  144 F.3d 1249 (9th Cir.1998) ...................................................................4, 10

*United States v. LaHue,*
  170 F.3d 1026 (5th Cir. 1999) .....................................................................16

*United States v. Medjuck,*
  156 F.3d 916 (9th Cir. 1998) .......................................................................11

*United States v. Omer,*
  395 F.3d 1087 (9th Cir. 2005) .....................................................................13

*United States v. Pace,*
  314 F.3d 344 (9th Cir. 2002) .........................................................................2

*United States v. Pemberton,*
  121 F.3d 1157 (8th Cir. 1997) .....................................................................15

*United States v. Perlaza,*
  439 F.3d 1149 (9th Cir. 2006) ................................................................10, 11

*United States v. Peterson,*
  812 F.2d 486 (9th Cir. 1987) .......................................................................10

*United States v. Renteria,*
  557 F.3d 1003 (9th Cir. 2009) .....................................................................13

*United States v. Tanke,*
  743 F.3d 1296 (9th Cir. 2014) .....................................................................13

*United States v. Vilar,*
  729 F.3d 62 (2d Cir. 2013) .......................................................................8, 9

*United States v. Wyncoop,*
  11 F.3d 119 (9th Cir. 1993) .........................................................................16

*United States v. Zakharov,*
  468 F.3d 1171 (9th Cir. 2006) .....................................................................11

ALEXANDER VASSILIEV'S
MOTION TO DISMISS
Case No.: CR 14-00341 CRB

*World–Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980).................................................................................................10

**Statutes**

18 U.S.C. § 1343 .............................................................................................. passim

18 U.S.C. § 3237 ........................................................................................................2

18 U.S.C. § 3238 ..................................................................................................2, 7

18 U.S.C. § 666 ................................................................................................. passim

Fed. R. Crim. P. 12(b).............................................................................................1, 2

Securities Exchange Act § 10(b)..................................................................................4

**Other Authority**

U.S. Dep't of Justice, *U.S. Attorneys' Manual*, tit. 9, Criminal Resource Manual § 974 ...................13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1   Pursuant to Fed. R. Crim. P. 12(b) and specially appearing for purposes of challenging

2   jurisdiction, [1] defendant Alexander Vassiliev moves to dismiss the indictment against him.  The

3   indictment fails to allege an offense against him and fails to establish a proper basis for United States

4   prosecution.

5                                        **INTRODUCTION**

6          This is a most unusual indictment.  It levels charges against foreign nationals and is based

7   solely on foreign conduct.  The indictment candidly states that the alleged offenses were committed

8   in their entirety outside the United States—they were "begun and committed outside the jurisdiction"

9   of any State or district.

10          All three defendants are foreign citizens and foreign residents.  Mr. Vassiliev is citizen of

11  Ukraine and St. Kitts & Nevis and resides in Dubai.  Mauricio Siciliano is a citizen of Venezuela and

12  resides in Canada.  The third defendant, Yuri Sidorenko, is also a foreign citizen and resides in

13  Dubai.  The indictment contains no allegation that any of them committed any criminal act in the

14  United States.  In fact, the indictment contains no allegation that any of them ever *entered* the United

15  States for any reason whatsoever, let alone in connection with the crime charged in the indictment.

16  The gist of the indictment is that Vassiliev and Sidorenko sought to pay bribes and/or gratuities to

17  Siciliano, who worked for an agency of the United Nations based in Canada, in order to influence

18  contracts awarded by other foreign agencies.  On that basis, Vassiliev is charged with several counts

19  of mail fraud under 18 U.S.C. § 1343 and several counts of bribery under 18 U.S.C. § 666.

20          These criminal counts are fundamentally flawed.  Neither statute has extraterritorial

21  application, so the indictment fails to state an offense under United States law.  Even if the statutes

22  were found to apply extraterritorially, the alleged facts in this case fail to allege minimum contacts or

23  sufficient nexus between the defendants and the United States, so the Due Process Clause forbids this

24  prosecution.   The charges have other deficiencies.  The wire fraud allegations do not allege any

25

26          [1]  Mr. Vassiliev was arrested in August 2014 in Switzerland pursuant to an extradition request
    of the United States Attorney's Office of the Northern District of California based upon this
27  indictment.  He has been held in custody in Switzerland since then, contesting his extradition, and has
    yet to ever enter the United States.  Undersigned counsel is appearing specially to challenge
28  jurisdiction.

                                               1                      ALEXANDER VASSILIEV'S
                                                                        MOTION TO DISMISS
                                                                      Case No.: CR 14-00341 CRB

specific wiring, which is the gist of the offense under Section 1343. Nor do they allege the "quid pro quo" required to adequately plead the wire fraud theory advanced by the government.[2] The bribery allegations do not allege that the defendants sought to influence any agency receiving federal funding, so they fail to state an offense under Section 666. The indictment must therefore be dismissed.

## BACKGROUND AND ALLEGATIONS

This motion is based solely on the factual allegations contained in the indictment. In reviewing a motion to dismiss under Rule 12(b), and particularly in reviewing motions to dismiss for failure to state an offense, a court must rely only on the allegations in the indictment. Neither party may rely on other claims or evidence. Rather, "the district court is bound by the four corners of the indictment." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002).

I.    **The Government's Venue Claim**

At the outset, it bears emphasis that throughout the indictment, the government not only concedes but explicitly affirms that the charges are based entirely on foreign conduct. This is due to the government's venue strategy. Under the ordinary venue statute, 18 U.S.C. § 3237, an offense must be tried in a district where part of the offense was committed. In this case, however, the government relies solely on the alternate foreign venue statute, 18 U.S.C. § 3238. Under § 3238, for offenses committed outside the United States, the offense must be tried in the district where the defendant "is arrested or is first brought." The Ninth Circuit has held that "§ 3238 does not apply unless the offense was committed entirely on the high seas or outside the United States (unless, of course, the offense was 'begun' there)." *United States v. Pace*, 314 F.3d 344, 351 (9th Cir. 2002).

In short, the government seeks to establish venue in the Northern District of California not by showing that the offense was committed here, but instead by bringing the defendant here after he is extradited. Thus, in order to rely on the provisions of § 3238, the government explicitly states throughout the indictment that the offense conduct was foreign. Each criminal count alleges that the

---

[2]  Defendant Vassiliev hereby adopts and incorporates by reference the arguments made by codefendant Mauricio Siciliano in his Motion to Dismiss relating to the deficiencies of the Indictment.

ALEXANDER VASSILIEV'S
MOTION TO DISMISS
Case No.: CR 14-00341 CRB

offense was "begun and committed outside the jurisdiction of any particular State and district of the United States." (*See, e.g.*, Indictment ¶ 25.)

## II.   Factual Allegations

The factual allegations confirm the foreign nature of the charges.  The indictment states that all three defendants are foreign citizens who reside abroad.  (*Id.* ¶¶ 6-8.)  The indictment contains no allegation that any of the three defendants ever entered the United States.

According to the indictment, Vassiliev and his uncle, Sidorenko, owned and controlled a Ukrainian company known as EDAPS.  EDAPS is a manufacturer and supplier of identification and security products, including passport products.  (*Id.* ¶ 4.)  Co-defendant Siciliano was an executive at the International Civil Aviation Organization (ICAO), a U.N. agency based in Canada.  The ICAO is funded by member states, and during the relevant time period, the indictment states that the ICAO received approximately 25% of its funding from the United States.  (*Id.* ¶ 3.)

The indictment alleges that Vassiliev and Sidorenko paid bribes and gratuities to Siciliano in order to benefit EDAPS's business.  According to the charges, they sought to have Siciliano use his position in order to help EDAPS obtain business from other organizations, including the Organization for Security and Cooperation in Europe (OSCE) (*id.* ¶ 11) and Interpol (*id.* ¶ 12-14).  For example, the indictment alleges that in order to obtain business selling an e-passport product to Interpol, Vassiliev and Sidorenko paid bribes and gratuities to Siciliano so that he would, on behalf of ICAO, endorse or certify the EDAPS e-passport product.  Importantly, the indictment does not allege that Vassiliev and Sidorenko sought to obtain business from ICAO itself.

The indictment contains five counts.  Count One and Two allege conspiracy to commit wire fraud and wire fraud in violation of 18 U.S.C. § 1343.  Counts Three, Four, and Five allege conspiracy to commit bribery and bribery in violation of 18 U.S.C. § 666.  For the reasons given below, all five counts must be dismissed.

## <u>ARGUMENT</u>

## I.   BECAUSE THE CRIMINAL STATUTES CHARGED IN THE INDICTMENT DO NOT APPLY EXTRATERRITORIALLY, AND THE ALLEGED CONDUCT IS ENTIRELY FOREIGN, THE INDICTMENT FAILS TO ALLEGE AN OFFENSE

All counts of the indictment must be dismissed because they are based entirely on foreign

ALEXANDER VASSILIEV'S
MOTION TO DISMISS
Case No.: CR 14-00341 CRB

conduct.  The wire fraud charges do not allege any domestic use of wires, or indeed any domestic

acts at all.  The wire fraud statute, 18 U.S.C. § 1343 does not apply extraterritorially, so the wire

fraud counts fail to state an offense.  Similarly, the bribery counts do not allege any domestic conduct

but rather a bribery scheme involving a foreign official and foreign citizens in a foreign country.

Like the wire fraud statute, the bribery statute, 18 U.S.C. § 666, does not apply extraterritorially.[3]

## A.    Extraterritorial Application of Statutes After *Morrison*

For centuries, the United States Supreme Court has applied a presumption that domestic

statutes do not have extraterritorial application.  "[T]he legislation of every country is territorial; that

beyond its own territory, it can only affect its own subjects or citizens."  *Rose v. Himely*, 8 U.S. (4

Cranch.) 241, 279 (1808) (Marshall, C.J.).  In the twentieth century, the Court recognized that

Congress may, pursuant to certain constitutional grants of authority, enact statutes with

extraterritorial effect.  It nonetheless applied a canon of construction "that legislation of Congress,

unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United

States."  *EEOC v. Arabian Am. Oil Co.* ("*Aramco*"), 499 U.S. 244, 248 (1991) (quoting *Foley Bros.,*

*Inc. v. Filardo*, 336 U.S. 281, 285 (1949)).

That canon of construction, however, was sometimes loosely applied by lower courts, who

were too quick to find a "contrary intent" even when none was expressed in the statutory text.  In

2010, the Supreme Court again re-affirmed the strength of the presumption in *Morrison v. Nat'l*

*Australia Bank Ltd.*, 561 U.S. 247 (2010).

In *Morrison*, the Court considered the extraterritorial application of § 10(b) of the Securities

Exchange Act.  Lower courts had uniformly found that it had extraterritorial effect.  The Supreme

Court disagreed.  It criticized lower courts for seeking "to 'discern' whether Congress would have

---

[3] Questions of extraterritorial application are often colloquially referred to as "jurisdictional," but the Supreme Court has held that they are in fact merits questions.  *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 254 (2010).  A challenge based on lack of extraterritorial application is therefore best characterized as a failure to state an offense.  By contrast, the Ninth Circuit's due process nexus jurisprudence (discussed in Argument II below), is drawn from civil "minimum contacts" cases.  *See United States v. Klimavicius–Viloria*, 144 F.3d 1249, 1257 (9th Cir.1998).  It therefore could arguably be characterized as a "jurisdictional" inquiry.  Regardless how these two arguments are characterized, the end result is the same: the indictment is defective because it is based entirely on foreign conduct.

ALEXANDER VASSILIEV'S
MOTION TO DISMISS
Case No.: CR 14-00341 CRB

1    wanted the statute to apply," into an inquiry of "whether it would be reasonable" to apply the statute

2    extraterritorially.  *Id*. at 255, 257.  It criticized the loose "conduct and effects" tests used by lower

3    courts, which had led to confusing and unpredictable results.  "The results of judicial-speculation-

4    made-law—divining what Congress would have wanted if it had thought of the situation before the

5    court—demonstrate the wisdom of the presumption against extraterritoriality."  Id. at 261.

6         The Court thus held that for the presumption to be overcome, Congress must clearly indicate

7    its intent in the statutory text.  "When a statute gives no clear indication of an extraterritorial

8    application, it has none."  *Id*. at 255.  Inferences about what Congress might have intended are

9    insufficient.  Rather, Congress must give a "clear" and "affirmative indication."  *Id*. at 265; *see also*

10   *Kiobel v. Royal Dutch Petroleum Co*., 133 S. Ct. 1659, 1665 (2013) (holding that the Alien Tort

11   Claims Act does not have extraterritorial effect because "nothing in the text of the statute suggests

12   that Congress intended causes of action recognized under it to have extraterritorial reach").

13        *Morrison* was a watershed case, and in its wake, courts have reconsidered the extraterritorial

14   application of various federal statutes.  For example, the extraterritorial effect of RICO was unsettled

15   prior to *Morrison*.  After *Morrison*, the Ninth Circuit recognized "that RICO does not apply

16   extraterritorially in a civil or criminal context."  *United States v. Chao Fan Xu*, 706 F.3d 965, 974

17   (9th Cir. 2013).  The extraterritorial application of the Commodities Exchange Act was similarly

18   unclear pre-*Morrison*.  After *Morrison*, as the Second Circuit recently recognized, the statute cannot

19   be applied extraterritorially.  *Loginovskaya v. Batratchenko*, 764 F.3d 266, 271-72 (2d Cir. 2014).  In

20   sum, as the Ninth Circuit has stated, *Morrison* created a "strong presumption that enactments of

21   Congress do not apply extraterritorially."  *Keller Found./Case Found. v. Tracy*, 696 F.3d 835, 844

22   (9th Cir. 2012).

23   **B.      The Wire Fraud Charges Fail to State an Offense**

24        **1.      The Wire Fraud Statute Does Not Apply Extraterritorially**

25        The wire fraud statute contains no clear and affirmative indication of extraterritorial

26   application.  Therefore, under *Morrison*, it has none.  The statute states, in relevant part:

27        Whoever, having devised or intending to devise any scheme or artifice to
          defraud, or for obtaining money or property by means of false or fraudulent

28

5

ALEXANDER VASSILIEV'S
MOTION TO DISMISS
Case No.: CR 14-00341 CRB

pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343.

It is true that the statute mentions the use of wires "in interstate or foreign commerce." But as *Morrison* explicitly held, the mere mention of foreign commerce is not sufficient to overcome the strong presumption against extraterritoriality. In fact, the Securities and Exchange Act likewise includes a reference to foreign commerce, and on that basis, the government argued in *Morrison* that the statute had at least some extraterritorial effect. The Supreme Court flatly rejected that argument. "[W]e have repeatedly held that even statutes that contain broad language in their definitions of 'commerce' that expressly refer to 'foreign commerce' do not apply abroad." 561 U.S. at 262-63 (quoting *Aramco*, 499 U.S. at 251). A "general reference to foreign commerce" does not "defeat the presumption against extraterritoriality." *Id.* Applying that logic to §1343 yields a straightforward answer: the statute lacks extraterritorial effect.

Since *Morrison*, the Ninth Circuit has not yet considered the extraterritorial reach of the wire fraud statute.[4] The Second Circuit has considered the issue, and it concluded that § 1343 cannot be applied extraterritorially. *European Community v. RJR Nabisco, Inc.*, 764 F.3d 129 (2d Cir. 2014). The plaintiffs in *RJR Nabisco* predictably relied on the statute's reference to "foreign commerce." The Second Circuit correctly rejected that argument.

> In *Morrison*, the Supreme Court observed that a "general reference to foreign commerce ... does not defeat the presumption against extraterritoriality." *Morrison*, 130 S.Ct. at 2882. This admonition appears to bar reading these statutes literally to cover wholly foreign travel or communication. We conclude that the references to foreign commerce in [§ 1343], deriving from the Commerce Clause's specification of Congress's authority to regulate, do not indicate a congressional intent that the statutes apply extraterritorially.

---

[4] In *United States v. Kazazz*, 2014 WL 6679284 (9th Cir. 2014) (unpublished), the defendant argued that the mail and wire fraud statutes did not have extraterritorial application. The Ninth Circuit determined that there was no need to reach the issue, because the defendant had used the mails and wires to send payments to Alabama as part of his fraudulent scheme. The court thus concluded: "Because the stipulated facts show a sufficient domestic nexus with the United States for the mail-fraud and wire-fraud counts, we need not address whether these statutes have extraterritorial application." *Id.*

ALEXANDER VASSILIEV'S
MOTION TO DISMISS
Case No.: CR 14-00341 CRB

*Id.* at 141.  Thus, under *Morrison*, the wire fraud statute does not apply extraterritorially.

### 2. The Wire Fraud Charges Are Based Entirely on Foreign Conduct

The wire fraud counts in the indictment are based entirely on foreign conduct.  Consistent with its reliance on § 3238, the foreign venue statute, the government's own wire fraud allegations state that the offense was "begun and committed outside the jurisdiction of any particular State and district of the United States."  (Indictment ¶ 28; *see also id.* ¶ 25.)  Unless the wire fraud statute has extraterritorial application, that concession is fatal to the wire fraud counts as currently charged.

In fact, the wire fraud counts themselves do not even specify any particular use of the wires.  For reasons specified below, that failure alone requires dismissal of the wire fraud counts.  The background section of the indictment discusses various emails between the alleged conspirators.  (*See id.* ¶¶ 11-20.)   It is unclear which, if any, of these emails is intended to serve as the *actus reus* of the wire fraud charges.  But regardless, it is apparent from the indictment that all of the emails are emails between foreign citizens who, at the time they sent the emails, were living and working in foreign countries.  There is no allegation that any email or wire transfer was sent either to or from anywhere within the United States.

The indictment states explicitly that the alleged crime was "begun and committed outside" the United States.  But under *Morrison*, the wire fraud statute does not cover offenses that were begun and committed outside the United States.[5]  Therefore, the wire fraud allegations in Counts One and Two must be dismissed because they fail to state an offense.

### C. The Bribery Charges Fail to State an Offense

The bribery charges suffer the same infirmities.  As with the wire fraud counts, the bribery counts state explicitly that the alleged offenses were "begun and committed outside" the United States.  Once again, those counts are deficient because the federal bribery statute does not apply

---

[5] In fact, given that § 1343 was enacted solely pursuant to Congress's Commerce Clause power, it is doubtful that Congress *could* constitutionally criminalize purely foreign frauds.  The Commerce Clause allows Congress to regulate "commerce with foreign nations."  Art. 1, sec. 8, cl. 3.  Commerce with foreign nations is commerce between the United States and foreign nations.  The Commerce Clause does not allow Congress to regulate purely foreign transactions of the sort that are alleged in this case, and the constitutional avoidance canon counsels against giving § 1343 a reach that would extend beyond the limits of the Commerce Clause.

ALEXANDER VASSILIEV'S
MOTION TO DISMISS
Case No.: CR 14-00341 CRB

1  extraterritorially, and because the charges lack a sufficient domestic nexus.

2  **1.   The Alleged Bribery Statute Does Not Apply Extraterritorially**

3  The bribery statute under which the defendant is charged, 18 U.S.C. § 666, contains no clear

4  and affirmative statement that it is meant to apply extraterritorially.  The word "foreign" appears

5  nowhere in the statute.  In that sense, applying *Morrison* to § 666 presents an even clearer case than

6  the wire fraud statute.  *See RJR Nabisco*, 764 F.2d at 141 ("The mail fraud statute presents an easier

7  case. There, unlike in the Travel Act and wire fraud statute, Congress included no reference to

8  transnational application whatsoever.").  The lack of textual basis for extraterritorial application of §

9  666 is fatal under *Morrison*.

10  And indeed all textual indications are that Congress had no intent to cover foreign bribes.  The

11  statute prohibits bribes paid to agents of "an organization, or of a State, local, or Indian tribal

12  government, or any agency thereof."  18 U.S.C. § 666(a)(1).  As the references to state, local and

13  tribal governments make clear, Congress's concern was bribes paid to domestic governmental

14  organizations.  Perhaps it would be reasonable for Congress to expand the statute to cover bribes paid

15  by foreign citizens to foreign governmental organizations that receive some funding from the United

16  States.  Perhaps that is what Congress "would have wanted if it had thought of the situation"

17  presented in this case.  *Morrison*, 561 U.S. at 261.  But that is precisely the sort of judicial

18  speculation and inference that *Morrison* forbids.

19  No federal circuit has yet ruled whether § 666 applies extraterritorially.  One district court has

20  held that it does, *see United States v. Campbell*, 798 F. Supp. 2d 293 (D.D.C. 2011), but that decision

21  was based on the rationale that the *Morrison* presumption does not apply to criminal statutes.  *Id*. at

22  304-05.  In a series of criminal cases decided shortly after *Morrison*, the government argued that the

23  strong presumption of *Morrison* applied only to civil cases.  Its argument was based on the Supreme

24  Court's decision in *United States v. Bowman*, 260 U.S. 94 (1922).  Much of the logic of *Bowman* is

25  clearly inconsistent with *Morrison*, and yet in the years after *Morrison*, a few courts, including the

26  district court in *Campbell*, adopted or at least entertained the government's argument.

27  More recent cases, however, have squarely rejected that view.  In *United States v. Vilar*, 729

28  F.3d 62 (2d Cir. 2013), the Second Circuit rejected the government's *Bowman*-based arguments for

ALEXANDER VASSILIEV'S
MOTION TO DISMISS
Case No.: CR 14-00341 CRB

limiting *Morrison*.  It stated that there is "no reason" that the concerns animating the *Morrison* presumption are "less pertinent in the criminal context," and thus concluded that "the presumption against extraterritoriality applies to criminal statutes."  *Id.* at 74.  For its part, the Ninth Circuit has not even cited *Bowman* since *Morrison* was decided.  But it has applied *Morrison* to criminal statutes, *see Xu*, 706 F.3d at 974, thus implicitly adopting the rationale of *Vilar* and rejecting the rationale of *Campbell*.

   *Morrison* applies to criminal statutes just as much as it does to civil statutes.  Under *Morrison*, because § 666 lacks a clear and affirmative indication that Congress intended the statute to apply extraterritorially, it does not apply extraterritorially.  The bribery charges in this case are based entirely on alleged offenses begun and committed outside the United States.  Under *Morrison*, those allegations fail to state an offense under United States law.

<b>2.  The Bribery Allegations Are Based Solely on Foreign Conduct</b>

   The bribery counts are based on the same foreign conduct as the wire fraud counts.  The indictment alleges that foreign citizens paid bribes to another foreign citizen, who was an agent of a foreign organization, in the hopes of procuring business with other foreign organizations.  There are no allegations that any U.S. funds were taken or at risk.  The Indictment merely alleges that the defendants paid bribes or gratuities in the hopes of obtaining business from other foreign organizations that are not alleged to have received any federal funds.  The bribery counts must be dismissed for the same reasons as the wire fraud counts.

**II. THE INDICTMENT MUST BE DISMISSED BECAUSE THE DUE PROCESS CLAUSE REQUIRES A DOMESTIC NEXUS, AND NONE IS ALLEGED IN THE CHARGES**

   *Morrison* aside, the Constitution forbids the sort of world-wide police power the government is attempting to assert in this case.  As argued above, as a matter of statutory interpretation under *Morrison*, the wire fraud and bribery statutes do not apply extraterritorially, so the indictment fails to allege an offense.  But even if a court were to conclude, contrary to the plain language of the statutes, that they do apply extraterritorially, the Due Process Clause precludes this prosecution.  As the Ninth Circuit has repeatedly held, principles of due process forbid prosecutions absent some sufficient domestic nexus.  None exists here.

9

1    Due process requires "a sufficient nexus between the defendant and the United States," such

2 that application of a domestic statute to the defendant's conduct "would not be arbitrary or

3 fundamentally unfair." *United States v. Davis*, 905 F.2d 245, 248-49 (9th Cir. 1990).  This

4 constitutional nexus requirement operates in addition to any statutory requirements—it is an

5 independent requirement that the government must meet.  *See United States v. Perlaza*, 439 F.3d

6 1149, 1160, 1168 (9th Cir. 2006).  The nexus requirement is derived from the "minimum contacts"

7 jurisprudence in civil cases.  "It ensures that a United States court will assert jurisdiction only over a

8 defendant who 'should reasonably anticipate being haled into court' in this country." *United States v.*

9 *Klimavicius–Viloria*, 144 F.3d 1249, 1257 (9th Cir.1998) (quoting *World–Wide Volkswagen Corp. v.*

10 *Woodson*, 444 U.S. 286, 297 (1980)).

11    The indictment in this case is fatally flawed due to its failure to allege any "sufficient nexus

12 between the defendant and the United States" that would permit this statute to be applied to

13 Vassiliev's conduct.  *Davis*, 905 F.2d at 248.  The indictment alleges no acts in the United States

14 whatsoever.  It alleges no minimum contacts, no basis that a foreign citizen might reasonably

15 anticipate being arrested anywhere in the world, incarcerated, extradited and haled in to United States

16 courts to answer such charges.

17    The only connection between these allegations and the United States is this:  The Indictment

18 claims that Vassiliev paid bribes to Siciliano, and Siciliano worked for an organization, the ICAO,

19 that received partial funding from the United States.  But the alleged bribes were not paid to obtain

20 ICAO business or funding—rather, the indictment alleges that the bribes were paid so that Siciliano

21 would help EDAPS obtain business from other organizations, none of which are alleged to have

22 received United States funding.  The connection with the United States is, to put it mildly, highly

23 attenuated.

24    This is precisely the sort of dubious foreign prosecution that the Ninth Circuit's due process

25 jurisprudence is intended to prevent.  Foreign citizens allegedly paying gratuities to other foreign

26 citizens, who work for a U.N. agency, in order to influence other foreign entities, does not "present[]

27 the sort of threat to our nation's ability to function that merits application of the protective principle

28 of jurisdiction." *United States v. Peterson*, 812 F.2d 486, 494 (9th Cir. 1987).  A civil lawsuit based

ALEXANDER VASSILIEV'S
MOTION TO DISMISS
Case No.: CR 14-00341 CRB

1    on these facts would fail for lack of minimum contacts.  As the Ninth Circuit has made clear, those

2    same principles apply to criminal prosecutions.

3           Prosecutions of foreign nationals based on purely foreign conduct are presumptively not

4    allowed under the Ninth Circuit's case law.  Where such prosecutions have been found constitutional

5    are situations, generally drug cases, where the defendants' criminal conduct targeted the United

6    States.  For example, in one recurring fact pattern, the Ninth Circuit has allowed the prosecution of

7    foreign drug traffickers arrested abroad—so long as the government could produce some evidence

8    that the drugs were headed for the United States.  *See United States v. Zakharov*, 468 F.3d 1171, 1178

9    (9th Cir. 2006); *United States v. Medjuck*, 156 F.3d 916, 919 (9th Cir. 1998); *United States v. Aikins*,

10   946 F.2d 608, 614 (9th Cir. 1990).  By contrast, federal prosecutors have no power to reach foreign

11   drug traffickers operating entirely abroad and selling to foreign markets.

12          In short, the Ninth Circuit has rejected claims of "universal jurisdiction," including when such

13   claims are based on the so-called "protective principle."  *Perlaza*, 439 F.3d at 1163.  The government

14   must show some meaningful connection between the prohibited activity and the United States.  The

15   fact that Siciliano worked for an organization in Canada that received some money from the United

16   States cannot be sufficient.  The alleged criminal conduct in this case did not target the United States;

17   it did not take place in the United States; and it had no victims in the United States.  A foreign citizen

18   allegedly paying a gratuity to a foreign official working for a foreign governmental agency would not

19   reasonably anticipate being haled into United States court.  Other countries are fully capable of

20   prosecuting and punishing frauds and bribery schemes within their own borders.

21          As the Ninth Circuit has recognized, the United States is not the world's policeman.  Because

22   there is no domestic nexus alleged, the indictment must be dismissed.

23   **III.    BECAUSE THEY FAIL TO ALLEGE ESSENTIAL ELEMENTS OF THE
         OFFENSES, EACH COUNT MUST BE DISMISSED**

24

25          **A.    Because the Wire Fraud Counts Fail to Allege a Specific Use of the Wires, the
                Wire Fraud Counts Fail to State an Offense and are Duplicitous**

26

27   Even aside from the problems related to the foreign nature of the wire fraud allegations,

28   described in Arguments I and II above, the wire fraud allegations are deficient for another reason:

ALEXANDER VASSILIEV'S
MOTION TO DISMISS
Case No.: CR 14-00341 CRB

1  they fail to allege an individual wiring.  This allegation is essential, since an individual wiring is the

2  gist of the offense, and because the government must prove that each charged wiring is connected to

3  the fraudulent scheme.  On the other hand, if all of the various emails mentioned in the background in

4  the indictment are deemed to underlay the wire fraud count, then the count is fatally duplicitous.

### 1. Failure to State an Offense

6  A use of wires is the gist of a wire fraud offense under 18 U.S.C. § 1343.  And yet,

7  unaccountably, the wire fraud charge in this indictment does not allege a use of the wires.  It

8  therefore fails to state an offense.

9  In the closely related context of the mail fraud statute, the United States Supreme Court has

10  long held that the *actus reus* of mail fraud is the "overt act of putting a letter into the post office of

11  the United States." *Badders v. United States*, 240 U.S. 391, 393 (1916).  It has thus held that "each

12  putting of a letter into the post office" is "a separate offense." *Id*. at 394.

13  The Ninth Circuit applied the same logic to the wire fraud statute in *United States v. Garlick*,

14  240 F.3d 789 (9th Cir. 2001).  The Court noted that the particular use of the mails or wires does not

15  merely have technical or jurisdictional significance.  Rather, the purpose of these statutes is to

16  "protect the instrumentalities of communication, making the use of the mails or wires as part of a

17  fraudulent scheme an independent offense." *Id*. at 792.  The Court concluded that "that each use of

18  the wires constitutes a separate violation of the wire fraud statute." *Id*. at 793.  The reason is simple:

19  it is the use of the wires that is the "gist and crux of the offense." *Id*. at 792.

20  The substantive wire fraud count in this case, Count Two, fails to allege a particular use of the

21  wires.  It merely alleges generally that, as part of a fraudulent scheme, the co-defendants used wire

22  communications.  (Indictment ¶ 28.)  That is insufficient to state an offense, because the *actus reus*

23  and an essential element of an offense under § 1343 is a particular, individual use of the wires.  None

24  is alleged here.

25  This failure has much more than mere technical significance.  In order to prove a mail or wire

26  fraud charge, the prosecution must prove that the particular mailing or wiring was "incident to an

27  essential part of the scheme." *Schmuck v. United States*, 489 U.S. 705, 711 (1989) (quoting *Badders

28  v. United States*, 240 U.S. 391, 394 (1916)).  Thus, for example, a particular mailing that is sent after

ALEXANDER VASSILIEV'S
MOTION TO DISMISS
Case No.: CR 14-00341 CRB

1  a fraudulent scheme has been completed generally cannot give rise to a mail fraud charge.  *United*

2  *States v. Tanke*, 743 F.3d 1296, 1305 (9th Cir. 2014).  Because the indictment fails to specify a

3  particular use of the wires, it is impossible to tell whether this element is satisfied.  Since it was never

4  presented with an actual wiring, the grand jury could not have found probable cause that this element

5  is satisfied.  Since they do not know which wiring is alleged to have been an offense, there is no way

6  for the defendants to prepare any defense based on lack of connection with a fraudulent scheme.

7        Because the indictment fails to allege an essential element of wire fraud – a particular wiring,

8  and thus necessarily fails to allege that the wiring was incident to an essential part of the scheme – it

9  fails to allege an offense.  *United States v. Omer*, 395 F.3d 1087 (9th Cir. 2005) (indictment's failure

10  to allege essential element (materiality of falsehood) required dismissal of bank fraud indictment);

11  *United States v. Du Bo*, 186 F.3d 1177 (9th Cir. 1999) (indictment's failure to allege mens rea, an

12  essential element of the Hobbs Act, required dismissal).

13        **2.    Duplicity**

14        In the alternative, the wire fraud count is duplicitous.  An indictment is duplicitous if it alleges

15  two or more crimes in a single count.  *United States v. Renteria*, 557 F.3d 1003, 1007 (9th Cir. 2009).

16  In this case, the wire fraud count itself does not specify a wiring, but the background section of the

17  indictment refers to numerous emails and bank transfers.  (Indictment ¶¶ 11-20.)  It is possible that

18  the government means to rely on some or all of these as the basis for the wire fraud count, but it is

19  impossible to tell if that is so, or if so, which one.

20        As the Ninth Circuit held in *Garlick*, "each use of the wires under the wire fraud statute

21  constitutes a separate offense."  240 F.3d at 792.  In light of the decades-old Supreme Court

22  jurisprudence on the mail fraud statute, this principle was fairly obvious even before *Garlick*.  It has

23  long been prescribed by the U.S. Attorneys' Manual: "proper draftsmanship requires that only one

24  mailing or transmission should be alleged in each count. Otherwise, the count may be duplicitous."

25  U.S. Dep't of Justice, *U.S. Attorneys' Manual*, tit. 9, Criminal Resource Manual § 974.

26        The defendants can only speculate why the prosecutors in this case failed to follow ordinary

27  and proper charging principles.  The reason may be that the prosecutors are simply unable to identify

28  a particular wiring that has any domestic aspect.  Relying on a particular foreign use of wires would

ALEXANDER VASSILIEV'S
MOTION TO DISMISS
Case No.: CR 14-00341 CRB

thus have made even more obvious that this case has no business being prosecuted in this country. The lack of any contacts with the United States was therefore obscured by failing to clearly identify the *actus reus* of the offense.  Whatever motivated the failure, the wire fraud count is deficiently pleaded and must be dismissed.

### B.   Because the Indictment Fails to Allege That the Organization Allegedly Influenced was the Organization That Received Federal Funding, the Bribery Charges Fail to State an Offense

The bribery statute, 18 U.S.C. § 666, is meant to protect agencies receiving federal funds, such as state and local governments, from corrupting influences.  Put differently, the statute seeks to protect federal government and federal taxpayers by ensuring that federal dollars distributed to other agencies are not wasted or misused as a result of bribery.  In sum, it prohibits bribery to agents of an "organization, government, or agency [that] receives, in any one year period, benefits in excess of $10,000 under a Federal program."  *Id.* § 666(b).  The types of agencies that count are generally defined in § 666(d).

In this case, the organization that allegedly received federal funds is the ICAO.  (Indictment ¶ 3.)  But the ICAO itself was not the target of the alleged bribery scheme—in other words, there is no allegation that Vassiliev or Sidorenko sought to gain money or property or any business contracts from the ICAO.  Rather, the indictment alleges that they wanted Siciliano's help to obtain business from other foreign entities; namely, the OSCE and Interpol (*Id.* ¶¶ 11-15).  There is no allegation that any of those organizations received federal funds or count as qualifying agencies for the purposes of §666(b) and (d).   Rather, the government alleges that under the alleged bribery scheme, Siciliano would use his position at ICAO (an allegedly federally funded agency) in order to influence decisions of other organizations (which are not alleged to be federally funded).[6]

This sort of indirect scheme is not covered by § 666, whose purpose is to protect

---

[6] Along the same lines, it is notable that the wire fraud counts are based on an "honest services" theory rather than a money or property theory.  The reason for this, presumably, is that the government cannot claim that either ICAO or the federal government were deprived of money or property as a result of the alleged scheme.  As noted above, Mr. Vassiliev joins and incorporates by reference Mr. Siciliano's arguments regarding the deficiency of the honest services theory, and reserves the right to challenge that theory on any other basis at a later date, if necessary.

organizations receiving federal funds.   As courts have held, the statute requires a unity of interest or

convergence between the funded organization and the victimized organization.   In fact, based on the

plain text of the statute as well as Congress's stated purpose, the Seventh Circuit has rejected the very

indirect fraud theory charged by the government in this case.  In *United States v. Abu-Shawish*, the

government charged and convicted the defendant under §666.  507 F.3d 550 (7th Cir. 2007).  The

government's theory was that the defendant, who was an agent of a private organization, had

defrauded the City of Milwaukee, which received federal funds.  The Seventh Circuit rejected this

theory.

> The plain language of the statute at issue here seems to require that the
> individual act as an agent on behalf of the organization that he or she
> defrauded for the purposes of obtaining funds. . . . [T]he statute only mentions
> one organization, which implies that all three relevant attributes attach to the
> organization:  it has custody of the funds, its agent committed the fraud, and it
> is victimized by the fraud.  There is no mention of a second organization that
> is, instead, victimized by the fraud. . . .  In short, the plain meaning of the
> statute suggests that *there must be an individual who acts as an agent of an*
> *organization, the individual must have unlawfully obtained funds from this*
> *organization, and the organization must receive over $10,000 in federal funds*
> *in any one year period.*

*Id*. at 555-56 (emphasis added).  It thus reversed the defendant's conviction.[7]

It is admittedly not the case that the bribery scheme must obtain the federal funds themselves.

*Sabri v. United States*, 541 U.S. 600, 604 (2004).  No nexus is required between the forbidden

conduct and the federal funds.  But what *is* required is some nexus between the forbidden conduct

and a federally funded agency.  Specifically, the "property at issue" in the criminal scheme must be

owned by or under the care of the organization that receives federal funds.  *United States v. Brown*,

727 F.3d 329, 337 (5th Cir. 2013); *see United States v. Cruzado–Laureano*, 404 F.3d 470, 483-84

(1st Cir. 2005); *United States v. Pemberton*, 121 F.3d 1157, 1169 (8th Cir. 1997); *United States v.*

*Delano*, 55 F.3d 720, 729-30 (2d Cir. 1995).

As the Ninth Circuit has said, Congress's intent in enacting § 666 was to "to bring conduct

that could have an effect on the administration or integrity of federal funds within the ambit of federal

---

[7] Moreover, to the extent that there is any ambiguity about the statute's scope, that ambiguity
must be resolved in the defendant's favor.  *See United States v. Santos*, 553 U.S. 507, 514 (2008).

ALEXANDER VASSILIEV'S
MOTION TO DISMISS
Case No.: CR 14-00341 CRB

criminal law." *United States v. Wyncoop*, 11 F.3d 119, 121 (9th Cir. 1993). But Congress "did not intend . . . to make misappropriations of money from every organization that receives *indirect* benefits from a federal program a federal crime." *Id.*; *accord United States v. LaHue*, 170 F.3d 1026, 1030-31 (5th Cir. 1999). Or as the Supreme Court has put it simply, "Liability for the acts prohibited by [§666](a) is predicated upon a showing *that the defrauded organization* 'receive[d], in any one period, benefits in excess of $10,000 under a Federal program.'" *Fischer v. United States*, 529 U.S. 667, 676 (2000) (emphasis added).

Taking the allegations in the indictment on their face, ICAO was the organization receiving federal funds, but it was not the organization from which the defendants sought business by paying bribes. Seeking to employ an executive of a federally-funded organization in order to influence a non-federally-funded organization is not a crime under § 666. The bribery counts fail to state an offense, and therefore must be dismissed.

## CONCLUSION

No criminal acts covered by United States law are validly pleaded in this indictment. All five counts are defective, and all five should be dismissed.

Dated: March 11, 2015

                                        BOERSCH SHAPIRO LLP

                                        */s/ Martha Boersch*
                                        MARTHA BOERSCH
                                        Attorney for Defendant Alexander Vassiliev

ALEXANDER VASSILIEV'S
MOTION TO DISMISS
Case No.: CR 14-00341 CRB