Daniel Olmos, SBN 235319
NOLAN BARTON BRADFORD & OLMOS LLP
600 University Avenue
Palo Alto, California 94301
650/326-2980 – Telephone
650/326-9704 – Facsimile

Attorney for Defendant
MAURICIO SICILIANO

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES, | Case No.: CR 14-341 CRB |
| Plaintiff, | |
| vs. | **DEFENDANT MAURICIO SICILIANO'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 12(B) AND 22 USC SECTION 288,** ***ET SEQ.*** |
| MAURICIO SICILIANO, ET AL., | |
| Defendants. | |

**INTRODUCTION**

Defendant Mauricio Siciliano hereby moves to dismiss the indictment against him pursuant to Federal Rule of Criminal Procedure 12(b), because the indictment (1) alleges criminal statutes that do not apply extraterritorially, (2) violates due process by failing to allege conduct with a sufficient domestic nexus, and (3) fails to allege conduct that gives rise to a criminal offense. In addition, Mr. Siciliano moves to dismiss the indictment pursuant to 22 U.S.C. § 288, et seq., because he is entitled to immunity from prosecution under the International Organizations Immunities Act (IOIA).

Mr. Siciliano is charged with two co-defendants, Yuri Sidorenko and Alexander Vassiliev, in a five-count indictment alleging that all three defendants committed, and conspired to commit, honest services wire fraud in violation of 18 U.S.C. § 1343 (Counts 1 and 2); and that they solicited and

gave bribes involving a federal program, and conspired to do the same, in violation of 18 U.S.C. § 666 (Counts 3 through 5).

Mr. Siciliano is a citizen and resident of Canada, and at all times relevant to the indictment was employed in Montreal as a high-ranking official with the International Civil Aviation Organization (ICAO), an international organization recognized under the IOIA. According to the indictment, ICAO is tasked with, among other functions, setting international standards for machine-readable passports and other travel documents. At no time relevant to the indictment did Mr. Siciliano work or reside in the United States. The gravamen of the indictment is that Mr. Siciliano solicited and received bribes from Mssrs. Sidorenko and Vassiliev, both Ukrainian nationals affiliated with a Ukrainian business conglomerate called the EDAPS Consortium (EDAPS), to provide their business interests with access to and benefits from ICAO and ICAO-affiliated projects.

All five counts of the indictment must be dismissed, for a number of reasons. First, neither substantive offense alleged – honest services wire fraud and bribery involving programs receiving federal funds – applies extraterritorially. Moreover, even if they did, it would violate the Due Process Clause to prosecute Mr. Siciliano because the instant indictment fails to allege conduct with a sufficient nexus to the United States. Indeed, the only nexus alleged is that the United States partially funds ICAO. Third, the indictment must be dismissed because it fails to allege conduct that gives rise to any criminal offense, most specifically because it fails to allege any official act performed by Mr. Siciliano or any official conduct by ICAO. And finally, the indictment must be dismissed because Mr. Siciliano is immune from prosecution given his position with ICAO, an international organization specifically recognized in the IOIA.

**STATEMENT OF FACTS**

Mr. Siciliano is a citizen and resident of Canada, and his co-defendants are both Ukrainian nationals. The indictment alleges no conduct that took place in the United States. Rather, the indictment alleges that, between 2005 and June 2010, Mr. Siciliano accepted a series of bribes from

2

his co-defendants, whose purpose in conferring the financial benefits was to benefit EDAPS. Specifically, the indictment alleges that, in exchange for the bribes, Mr. Siciliano *inter alia* arranged to introduce EDAPS officials to government officials who could grant business to EDAPS, particularly in the area of machine-readable passports and other border security projects; to endorse EDAPS with the Organization for Security and Cooperation in Europe (OSCE); to assist EDAPS in becoming involved with INTERPOL's e-passport project; and to arrange for travel documents for EDAPS affiliates to attend ICAO conferences. The indictment alleges that Mr. Siciliano directed such bribes to a bank account in Switzerland. The indictment also alleges that, in addition to the monetary payments to Mr. Siciliano, the co-defendants arranged for an employment opportunity with EDAPS for Mr. Siciliano's son.

With respect to Counts 1 and 2, the indictment alleges that the United States funded approximately 25 percent of ICAO's annual operating budget. The United States is also one of the 191 member states of ICAO.

## ARGUMENT

### I. THE STATUTES ALLEGED IN THE INDICTMENT DO NOT APPLY EXTRATERRITORIALLY

The five charges against Mr. Siciliano in the indictment must be dismissed because they allege violations of statutes without extraterritorial application. "It is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 255 (2010) (internal quotation marks and citation omitted). In *Morrison*, the Court made it clear that, when faced with statutes "silent as to [] extraterritorial application," courts are not to attempt to "discern whether Congress would have wanted the statute to apply" extraterritorially. *Id*. (internal quotation marks and citation omitted). Instead, courts must employ a clear presumption against extraterritoriality: "When a statute gives no clear indication of an extraterritorial application,

it has none." *Id*. Although *Morrison* was a civil case, the Court stated expressly that its presumption applies "in all cases." *Id*. at 261.

Although the Supreme Court has not revisited extraterritoriality in the criminal context since *Morrison* was decided, the Ninth Circuit recently applied *Morrison* in a criminal case. *See U.S. v. Chao Fan Xu,* 706 F.3d 965, 974 -975 (9th Cir. 2013) (analyzing extraterritoriality in a criminal RICO case, beginning with *Morrison*'s presumption that the RICO statute does not apply extraterritorially "in a civil or criminal context"). In addition, other circuits have either expressly held that *Morrison* applies to criminal cases or have assumed that it does. *See, e.g., European Community v. RJR Nabisco, Inc*., 764 F.3d 129, 139 (2d Cir. 2014) (applying *Morrison* to various criminal law statutes); *United States v. Vilar*, 729 F.3d 62, 72 (2d Cir. 2013) (applying *Morrison* in the criminal context); *U.S. v. Isaacson*, 752 F.3d 1291, 1299 (11th Cir. 2014) (assuming but not deciding that *Morrison* applies to criminal cases); *U.S. v. Ali*, 718 F.3d 929, 934-935 (D.C. Cir. 2013) (citing *Morrison* for the proposition that "In most cases, the criminal law of the United States does not reach crimes committed by foreign nationals in foreign locations against foreign interests").

### A. The wire fraud statute does not apply extraterritorially, and therefore Counts 1 and 2 must be dismissed.

Counts 1 and 2 of the indictment must be dismissed because 18 U.S.C. § 1343 does not apply extraterritorially. The wire fraud statutes apply to the transmission of communications by "wire, radio, or television ... in interstate or foreign commerce" in the execution of a scheme to defraud. *See* 18 U.S.C. § 1343. This reference to "interstate or foreign commerce" is the only portion of the statutory text that even arguably has any bearing on its territorial reach.

Although the Ninth Circuit has not addressed the extraterritoriality of the wire fraud statutes since *Morrison*, the Second Circuit found this language insufficient to overcome *Morrison*'s presumption against extraterritoriality." *European Community*, 764 F.3d 129, 139 (2d Cir. 2014). The court there held:

> In *Morrison*, the Supreme Court observed that a "general reference to foreign commerce ... does not defeat the presumption against extraterritoriality." *Morrison*, 130 S.Ct. at 2882. This admonition appears to bar reading these [wire fraud] statutes literally to cover wholly foreign travel or communication. We conclude that the references to foreign commerce in these statutes, deriving from the Commerce Clause's specification of Congress's authority to regulate, do not indicate a congressional intent that the statutes apply extraterritorially.

*European Community*, 764 F.3d at 140 -141 (footnote omitted).

Here, *none* of the elements are alleged to have occurred within the territorial United States. *See European Community*, 764 F.3d at 142. The *only* domestic connection in this case is the fact that the United States provides funding to ICAO. Not a single predicate communication is alleged to have been sent to or from the United States, nor by a participant who was in, en route to, or coming from the United States. In short, the misuse of the wires alleged in the indictment – the "gist and crux" of the offense – has no nexus whatsoever to the United States. *See United States v. Garlick*, 240 F.3d 789, 792 (9th Cir. 2001); *U.S. v. Pace*, 314 F.3d 344, 349 (9th Cir. 2002) ("the essential conduct prohibited by § 1343 [is] the misuse of wires" (citing *Garlick*, 240 F.3d at 790).

The plain language of the statute, the interpretation of multiple circuits, the gravamen of the offense, and the alleged conduct in this case do not permit the application of the wire fraud statute to entirely foreign conduct. The wire fraud counts must be dismissed.

**B.  The bribery statute does not apply extraterritorially, and therefore Counts 3 through 5 must be dismissed.**

Similarly, the plain meaning of the text of 18 U.S.C. § 666 demonstrates no intent to apply extraterritorially. The statute criminalizes "Whoever. . . . (1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof—. . . . corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving any thing of value of $5,000 or more . . . ." 18 U.S.C. § 666. Under *Morrison*, the statute's silence as to extraterritorial application is

dispositive. *Morrison*, 561 U.S. at 255.  This Court must not attempt to "discern" or divin[e]" what Congress intended; it must accept the statute's silence at face value. *Morrison*, 561 U.S. at 255, 261.

Since *Morrison* was decided, the only court to have considered the territorial reach of § 666 is the District of Columbia in *United States v. Campbell*, 798 F. Supp. 2d 293 (D.D.C. 2011). *Campbell*, however, applied the pre-*Morrison* standard set forth in *United States v. Bowman*, 260 U.S. 94 (1922), finding that *Morrison* did not apply at all in the criminal context.  Under the pre-*Morrison* standard, it found that § 666 applied extraterritorially. Thus, *Campbell* incorrectly applied *Bowman* where it should have applied *Morrison*.  In doing so not only did it err, but more importantly for our purposes, it parted ways with the Ninth Circuit which has held that *Morrison does* apply in the criminal context.  *See U.S. v. Chao Fan Xu,* 706 F.3d 965, 974 -975 (9th Cir. 2013) (beginning with the presumption, under *Morrison,* that the RICO statute does not apply extraterritorially, whether "in a civil or criminal context").  And, the Ninth Circuit's interpretation is reinforced by that of other circuits. *See, e.g., European Community v. RJR Nabisco, Inc*., 764 F.3d 129, 139 (2d Cir. 2014); *United States v. Vilar*, 729 F.3d 62, 72 (2d Cir. 2013); *U.S. v. Isaacson*, 752 F.3d 1291, 1299 (11th Cir. 2014); *U.S. v. Ali*, 718 F.3d 929, 934-935 (D.C. Cir. 2013) (beginning with *Morrison* in the criminal context, thereby undercutting *Campbell*'s application of *Bowman*).

The Court here should apply *Morrison*, which the Supreme Court expressly stated applies "in all cases." 561 U.S. at 261. *Chao Fan Xu* is the only pronouncement from the Ninth Circuit on the issue, and *Chao Fan Xu* began with the *Morrison* presumption.  *See* 706 F.3d at 974-975.  Section 666 has absolutely no indication of extraterritorial application in its text, much less any indication that it should reach *exclusively* extraterritorial conduct.  Under *Morrison* – as even the *Campbell* court recognized – § 666 does not reach this conduct. The bribery counts must also be dismissed.

## II. THE DUE PROCESS CLAUSE REQUIRES DISMISSAL OF THE CHARGES BECAUSE THERE IS NO DOMESTIC NEXUS

Even if this Court determines that the statutes alleged in the indictment may apply extraterritorially, all counts against Mr. Siciliano must nevertheless be dismissed because, given the factual allegations in this case, subjecting Mr. Siciliano to prosecution would violate his right to due process. "In order to apply extraterritorially a federal criminal statute to a defendant consistently with due process, there must be a sufficient nexus between the defendant and the United States, so that such application would not be arbitrary or fundamentally unfair." *U.S. v. Davis*, 905 F.2d 245, 248-249 (9th Cir. 1990) (citation omitted). "The nexus requirement serves the same purpose as the 'minimum contacts' test in personal jurisdiction. It ensures that a United States court will assert jurisdiction over a defendant who 'should reasonably anticipate being haled into court' in this country."[1] *United States v. Klimavicius–Viloria*, 144 F.3d 1249, 1257 (9th Cir. 1998) (some internal quotation marks and citation omitted). The Government bears the burden to show that a sufficient nexus exists. *U.S. v. Perlaza*, 439 F.3d 1149, 1169 (9th Cir. 2006) (reversing a conviction where the "district court's failure to require the government to establish nexus" was not harmless).

There are numerous Ninth Circuit cases in which the court has concluded that there is a sufficient foreign nexus to justify domestic criminal jurisdiction involving foreign conduct: "where an attempted transaction is aimed at causing criminal acts within the United States . . . [such as]

---

[1] The "minimum contacts" test for personal jurisdiction requires the following:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

where [a] plan for shipping [] drugs was likely to have effects in the United States," *Klimavicius–Viloria*, 144 F.3d at 1257 (internal quotation marks and citations omitted); the intent to sell drugs to buyers in the U.S., *U.S. v. Peterson*, 812 F.2d 486, 493 (9th Cir.1987); the intent to smuggle contraband into United States territory, *Davis*, 905 F.2d at 249; where a defendant laundered ill-gotten profits through United States banks, *United States v. Lazarenko*, 564 F.3d 1026 (9th Cir. 2009); where a foreign defendant administering U.S. funds abroad solicited a bribe in U.S. currency, *Campbell*, 798 F. Supp. 2d at 307; where a United States citizen committed a crime against a foreign victim, *U.S. v. Clark*, 435 F.3d 1100, 1108 (9th Cir. 2006) ("Although Clark's citizenship alone is sufficient to satisfy due process concerns, his U.S. investments, ongoing receipt of federal retirement benefits and use of U.S. military flights also underscore his multiple and continuing ties with this country"); or where some part of the conduct alleged took place inside the territorial United States, *U.S. v. Medjuck,* 156 F.3d 916, 919 (9th Cir. 1998) (foreign defendant used "telephone calls and personal meetings in the United States" to make arrangements and sent his agent to the United States to deliver money to a boat captain who would facilitate the transfer of drugs).

These cases, along with plain logic, clearly demonstrate that the allegations in this case do not support a sufficient nexus between Mr. Siciliano's conduct and the United States to sustain the charges. In substance, Mr. Siciliano, a Canadian resident and citizen whose primary place of business is Montreal, is alleged to have solicited and received money from individuals associated with a Ukrainian business conglomerate living in Dubai. There is no allegation that Mr. Siciliano was present in the United States during any alleged transaction, nor that any alleged or anticipated conduct underlying the allegations was directed at or to the United States.[2] Rather, the sole alleged

---

*Boschetto v. Hansing*,539 F. 3d 1011, 1016 (2008) (citation omitted) (finding personal jurisdiction lacking based on a single sale on eBay to a buyer in California).

[2] Mr. Siciliano was arrested at LAX during a stop-over, while en route from Australia to his home in Montreal.

connection to the United States is the country's financial contributions to ICAO, the United Nations agency that employed Siciliano.  Moreover, the Government does not allege that Mr. Siciliano appropriated, disbursed, or misused any ICAO funds, but rather that he *received* money from the co-defendants by virtue of his position at ICAO.  In other words, the United States' allegation in this case is not that its own money was misspent, but rather that Siciliano mis-traded in the power inhering in the foreign office he held – in an organization to which the United States contributed some funding.  This is the legal equivalent of the United States attempting to assert criminal jurisdiction over a Kenyan doctor who commits an assault at the Nairobi hospital which employs her on the sole basis that the United States Agency for International Development provided funding to build and maintain the hospital.

In sum, the indictment makes no allegation that any of the players in this case have any personal, professional, or legal connection to the United States.  None of the alleged activity took place on U.S. soil. None of the alleged money exchanging hands was from the United States, destined for the United States, or sent through United States banks.  And, there is no allegation that this conduct would "caus[e] criminal acts within the United States," *Klimavicius–Viloria*, 144 F.3d at 1257.  Mr. Siciliano had no reason to anticipate being haled into court in the United States.

**III.   THE INDICTMENT FAILS TO ALLEGE CONDUCT THAT RISES TO A CRIMINAL OFFENSE**

As a general matter, although there are several different bribery statutes, the Supreme Court has established some parameters on what conduct may – and may not – be criminally sanctioned as corrupt.  "[I]ngratiation and access . . . are not corruption." *Citizens United v. Federal Election Com'n,* 558 U.S. 310, 360-361 (2010).  So, for instance, donor programs that promised special access to high-ranking Republican officials, or President Clinton's White House coffees, offered to major donors amounted to the "peddling [of] access," rather than the sale of "actual influence." *McConnell v. Federal Election Com'n*, 540 U.S. 93, 150, (2003), *overruled on whether the former was corrupt*

*by Citizens United*, 558 U.S. 310.  Quite simply, "[t]he Government may not seek to limit the appearance of mere influence or access." *McCutcheon v. Federal Election Com'n*, 134 S.Ct. 1434, 1451 (2014).

Many of the allegations in the indictment describe conduct that falling within this zone of access and ingratiation, rather than fraud.  For instance, the indictment charges, *inter alia*, that Mr. Siciliano: "introduc[ed] and publiciz[ed] . . . EDAPS" to officials who could be useful to EDAPS; "arrang[ed] for EDAPS to appear at ICAO conferences;" and "recommended that an OSCE official contact EDAPS for assistance." Indictment ¶ 11.  This conduct, even if proved in court, is not actionable criminally, although though it may violate regulatory law or employer codes of conduct.

### A. The indictment fails to allege an official action, a requirement of quid pro quo bribery for honest services fraud under Counts 1 and 2.

"[B]ribes and kickbacks constitute honest-services fraud, . . . .  no other misconduct falls within § 1346's province." *Skilling v. U.S.,* 561 U.S. 358, 412 (2010) (citation omitted).  The "prohibition on bribes and kickbacks draws content not only from . . . case law, but also from federal statutes proscribing – and defining – similar crimes." *Id.* at 412 (citing 18 U.S.C. §§ 201(b) (bribery), 666(a)(2); 41 U.S.C. § 52(2) (kickbacks); and circuit court decisions).

Bribery requires at least an implicit *quid pro quo*: "Only individuals who can be shown to have had the specific intent to trade official actions for items of value are subject to criminal punishment on [the bribery] theory of honest services fraud." *U.S. v. Kincaid-Chauncey*, 556 F.3d 923, 943 & n.15 (9th Cir. 2009) (citation omitted); *see also* Comment to Ninth Circuit Model Jury Instruction 8.123 - Deprivation of Intangible Right of Honest Services.  The *quid pro quo* need not be explicit nor concern a specific official act; a course of conduct of gifts flowing to a public official in exchange for a pattern of official acts suffices. *See* Comment to Instruction 8.123 (citing *Kincaid-Chauncey*, 556 F.3d at 943).

Nevertheless, whether implicit or explicit, a *quid pro quo* involves, and requires, an official act. *United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 404-05 (1999) ("for bribery there must be a *quid pro quo* - a specific intent to give or receive something of value in exchange for an official act"); *U.S. v. Garrido*, 713 F.3d 985, 999 (9th Cir. 2013) (same). "[O]fficial act" is defined in the federal bribery statute as "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit." 18 U.S.C. § 201(a)(3); *see Skilling*, 561 U.S. at 412. The language specifying an action "on" a matter that is "pending" or may be brought "before" the public official closely circumscribes the sphere of conduct which can constitute the "quo" in quid pro quo bribery. Furthermore, federal bribery is defined as being "influenced in the *performance* of any official act." 18 U.S.C. § 201(b)(2)(A) (emphasis added). So not only must there be an official act at issue, but the recipient of the bribe must actually perform the act – not simply contemplate it, prepare for it, or take initial steps in that direction.

The Government here alleges that Mr. Siciliano took a series of actions in exchange for payments. However, the indictment fails to allege official acts, much less the "perform[ance]" of official acts. Instead, the Government charges a litany of conduct that amounts to "trad[ing] . . . on the reputation, network and influence that comes with . . . office," conduct which is outside the reach of the bribery statutes. *U.S. v. Urciuoli,* 513 F.3d 290, 295 (1st Cir. 2008). For instance, the Government alleges that Mr. Siciliano gave Mr. Vassiliev a "statement . . . expressing support for EDAPS," which Vassiliev then sent to an official at INTERPOL, Indictment ¶ 12, and that he "worked to facilitate" the assignment of a three-letter identifying code. *Id.* ¶ 14. Yet *working to facilitate* the assignment of a code or *expressing support* for something do not indicate a "decision or action" "on any . . . cause. . . which may . . . be pending, or which may . . . be brought before" him. 18 U.S.C. § 201(a)(3). Quite the opposite, such allegations expressly demonstrate that Mr. Siciliano

11

lacked the authority to make the official action that was allegedly sought by EDAPS. Official action requires either rendering a decision or influencing a decision, by invoking "oversight authority or threaten[ing] to use official powers." *Urciuoli,* 513 F.3d at 296; *see also United States v. Rabbitt*, 583 F.2d 1014 (8th Cir. 1978), *cert. denied*, 439 U.S. 1116 (1979), (no mail fraud committed when politician took kickbacks for *recommending* to other officials, over whom the speaker had no authority, an architectural firm for work on state projects). Supporting, endorsing, recommending, or facilitating, without more, is insufficient to state the crime.

Next, the Government alleges that Mr. Siciliano sent a letter on ICAO letterhead "request[ing] a visa for Vassiliev's girlfriend so that she could participate in an ICAO event as a technical specialist." Indictment ¶ 15. The Government does not allege that the granting or requesting of visas was under ICAO's purview, or that Siciliano had any authority to grant the visa (nor could it, as visas are granted by the accepting nation, not international organizations or individual diplomats). *See U.S. v. Ring*, 706 F.3d 460, 470 (D.C. Cir. 2013) ("official act" refers to "a class of questions or matters whose answer or disposition is determined by the [agency at issue]"). Nor does the Government allege that he actually *hired* her to participate in the event as a technical specialist.[3]

The Government comes closer when it states that Mr. Siciliano "considered . . . '"hir[ing]"'" Mr. Sidorenko as a consultant in order to obtain a travel document for him. Indictment ¶ 16. However, "considering" an illegal act is not a crime. Even were the alleged "quo" here – hiring Mr. Sidorenko – cognizable, Mr. Siciliano did not "perform" the act of hiring him, nor is there any allegation that Mr. Siciliano had the authority to hire anybody at ICAO.

In fact, in the only paragraph in the indictment regarding conduct in his official capacity, Mr. Siciliano is alleged to have *declined* to take the requested action. *See* Indictment ¶ 13 (Siciliano

---

[3] That he used ICAO letterhead does not turn an unofficial act into an official one. *See U.S. v. Urciuoli,* 513 F.3d 290, 295 (1st Cir. 2008) (congressman's use of senate letterhead for advocacy over which he had no official authority did not constitute honest services fraud).

responded to a request from Vassiliev that ICAO 'certify' the Ukrainian ePassport with a statement that "ICAO does not certify passports or processes. However, I am trying to find a wording that would be loose, but good enough to serve your purposes. Also, I am afraid that if I pass it through my present chief, it would not be signed."). Paragraph 13 amounts to an allegation that Mr. Siciliano attempted to draft a letter expressing approval of the co-defendant's product, a letter which he expressly states is outside the purview of his office and outside the purview of the agency. Therefore, drafting some "loose" form of a letter cannot be an official act. Instead, it would amount to a letter of endorsement or support, addressed above. Furthermore, Mr. Siciliano did not "perform" the act; he is alleged merely to have thought about it, mulled it over, or vetted the idea.

In short, the indictment fails to allege a single "quo" sufficient to support the charge of honest services fraud involving quid pro quo bribery.

### B. Count 2 must be dismissed because the indictment fails to identify a "wire."

A use of wires is the gravamen of a wire fraud offense under 18 U.S.C. § 1343. However, the substantive wire fraud charge in this indictment does not allege a use of any wires.

In *United States v. Garlick*, 240 F.3d 789 (9th Cir. 2001), the Ninth Circuit held that the purpose of the wire fraud statutes is to "protect the instrumentalities of communication, making the use of the mails or wires as part of a fraudulent scheme an independent offense." *Id*. at 792. Indeed, the use of the wires is the "gist and crux of the offense." *Ibid*. The court concluded based upon this logic that "that each use of the wires constitutes a separate violation of the wire fraud statute." *Id*. at 793.

The substantive wire fraud count in this case, Count 2, fails to allege any specific use of the wires. Rather, the indictment alleges that Mr. Siciliano generally used wire communications as part of the scheme. *See* Indictment ¶ 28. That does not state an offense for wire fraud, because the *actus reus* of an offense under § 1343 is a particular use of the wires for the purpose of committing fraud. The indictment fails to identify a single one.

Further, in order to prove a wire fraud charge, the prosecution must prove that a particular wiring was "incident to an essential part of the scheme." *Schmuck v. United States*, 489 U.S. 705, 711 (1989). Because the indictment fails to specify a specific use of the wires, it necessarily fails to allege the connection between the wire and the fraud. Because the indictment fails to allege a wiring, and thus fails to allege that the wiring was incident to an essential part of the scheme, it fails to allege conduct that could give rise to a wire fraud offense.

### C. The alleged conduct does not violate 18 U.S.C. § 666 because there is no connection to any business or transaction of ICAO.

Federal program bribery, 18 U.S.C. § 666, was enacted after § 201 and targets bribery in connection with state and local entities receiving federal funds. *U.S. v. Garrido*, 713 F.3d 985, 999 (9th Cir. 2013). Its language is looser than that of § 201 – an official violates § 666 if he "corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded *in connection with any business, transaction, or series of transactions*" of a qualifying entity. 18 U.S.C. § 666(a)(1)(B) (emphasis added). The "in connection with [the] business [or] transaction" of the entity receiving federal funds requirement imposes a functional limitation: "Section 666 was intended to protect the integrity of federal funds, *and not as a general anti-corruption statute*." *United States v. Frega,* 933 F. Supp. 1536, 1542 (S.D. Cal. 1996) (emphasis added).

As set forth above, the indictment alleges that Mr. Siciliano undertook a series of side projects, capitalizing on the clout of his title. None of the actions alleged – attempting to facilitate getting visas, drafting letters of support for consideration of senior management, "endorsing" EDAPS – was in carrying out functions for that agency. They were not *connected to the business or transactions* of ICAO. *See United States v. Whitfield*, 590 F.3d 325, 345 (5th Cir. 2009) (while state court judges were agents of the AOC in *administrative* matters, acts of bribery in the carrying out of their *judicial* functions were not "connected with the transactions or business of the AOC"); *cf.*

*United States v. Fernandez*, 722 F.3d 1, 14 (1st Cir. 2013) (nexus requirement met when Puerto Rican legislators, "acting in their capacity as legislators, . . . performing the precise functions that members of a state legislative body perform as agents of a state government," pushed legislation in return for something of value).

For this reason as well, Counts 3 through 5 should be dismissed.

**IV. DEFENDANT SICILIANO IS ENTITLED TO IMMUNITY FROM PROSECUTION AS A RESULT OF HIS POSITION WITH ICAO**

Mr. Siciliano is entitled to immunity from prosecution on the basis of his employment with ICAO, and therefore the indictment must be dismissed pursuant to 22 U.S.C. §§ 288, et seq. and 254d: "Any action or proceeding brought against an individual who is entitled to immunity with respect to such action or proceeding under the Vienna Convention on Diplomatic Relations, under section 254b or 254c of this title, or under any other laws extending diplomatic privileges and immunities, shall be dismissed."

First, Mr. Siciliano's alleged acts fall within the privileges and immunities of the International Organizations Immunities Act (IOIA), and he is unquestionably immune from legal process in this country as a result. As a result of his employment with ICAO, and because the alleged activities that give rise to the charges arose in connection with his ICAO employment, Mr. Siciliano cannot be charged with a criminal offense in connection with, or arising out of, this employment. As a staff member in ICAO, and a Canadian citizen traveling on mission, Mr. Siciliano is entitled to both "official acts" as well as diplomatic immunity. Second, because Mr. Siciliano was transiting through the United States in connection with his ICAO position at the time of his arrest, holding his UN laissez-passer (UNLP), he is entitled to diplomatic immunity in the United States.

**A. The International Organizations Immunities Act.**

The IOIA, codified at 22 U.S.C. § 288 *et. seq.*, was ratified by Congress in 1945 and applies to foreign citizens employed by a recognized international organization. ICAO is one of the

international organizations recognized by IOIA. *See* Exhibit A. The IOIA entitles the employees of international organizations to exemptions, immunities, and privileges, including any type of legal action in the United States. The Act "accords employees of international organizations immunity `from all suit and legal process relating to acts performed by them in their official capacity and falling within their functions . . . ." Specifically, 22 U.S.C. § 288a(b) states that, "[o]fficers and employees of international organizations shall be immune from suit and legal process . . . ." *See also United States v. Bahel*, 662 F.3d 610, 623 (2d Cir. 2011).[4] Therefore, Mr. Siciliano is completely immune from prosecution in this case, and it is a bar to this prosecution. Indeed, his mere arrest was a violation of IOIA.

It is well settled that staff and employees of recognized international organizations have immunity under the IOIA. *See Mendaro v. World Bank*, 717 F.2d 610, 615 (D.C. Cir. 1983); *see also Brzak v. United Nations*, 597 F.3d 107 (2d Cir. 2010), cert. denied 131 S. Ct. 151 (Oct. 4, 2010) (dismissing suit against U.N. employees alleging conduct arising out of their employment with the agency). Indeed, in *Taiwan v. United States District Court for the Northern District of California*, 128 F.3d 712 , 718 (9th Cir. 1997), the Ninth Circuit held that the State Department's broad construction of the immunities conferred by the IOIA was due "substantial deference." *See also First Nat'l City Bank v. Banco Nacional de Cuba*, 406 U.S. 759, 767 (1972).

Here, it is plain that the IOIA confers immunity from prosecution upon Mr. Siciliano, as the claims in the indictment specifically relate to his employment with ICAO, an IOIA body. The acts

---

[4] Indeed, the U.S. Government itself recognizes "official acts" immunity for employees of international organizations in its own policy manuals. For example, in the State Department's "Diplomatic and Consular Immunity Guidance for Law Enforcement and Judicial Authorities," attached as Exhibit B, the State Department recognizes "official acts" immunity for employees:
> **Personnel of International Organizations**. International Organizations that have headquarters or other offices in the United States are staffed with administrative and executive Employees, as necessary, to carry out their functions. The vast majority of these employees enjoy . . . official acts immunity as provided for in U.S. domestic legislation (the International Organizations Immunities Act, 22 U.S.C. 2881).

16

which form the basis of the indictment were alleged to have been carried out in Mr. Siciliano's official capacity; they fit squarely within the IOIA, are covered by the Act, and are not actionable in a United States court. As a result, the indictment must be dismissed.

**B. Diplomatic Immunity.**

Mr. Siciliano's mere arrest in this case violated the immunity rights to which he was entitled. At the time of his arrest, Mr. Siciliano was transiting through the United States, returning on official ICAO duty travel. In fact, Mr. Siciliano was traveling on his UNLP, which was seized from him at the time of his arrest. As an international civil servant traveling on a United Nations Laissez Passer, Mr. Siciliano is entitled to full diplomatic immunity in connection with such travel, which was not honored by U.S. authorities.

The Convention on Privileges and Immunities of the United Nations (UN Convention), Article V. Section 18, confers upon U.N. staff, employees, and officials immunity from prosecution, including those traveling in the United States with a UNLP. The UNLP signifies that the holder enjoys the benefits of the Convention immunities while on duty travel. ICAO is an agency of the United Nations, and its employees and staff are also provided with UNLPs in connection with carrying out their duties and responsibilities including their mission travel. The UN Convention, along with its privileges and immunities, including freedom of prosecution, also extends to Mr. Siciliano, as he was traveling on a UNLP at the time of his arrest.

Indeed, the U.S. State Department Policy Guidance confirms this, holding that international civil servants in the U.S. for a short time are entitled to diplomatic immunity as they transit through the United States:

> Short term official visitors from other States to the United Nations or to international conferences convened . . . may enjoy full diplomatic immunity equivalent to that afforded diplomatic agents. Owing to the temporary nature of their visit, such officials will normally not have the usual official identity documents recognizable in the United States. Law enforcement officials should be sensitive to the existence of this situation and always coordinate with the U.S. authorities indicated . . . if confronted with an apparent offender appearing to fall into this category.

*See* Exhibit B at 8.

Article 60 of ICAO's Convention document, to which the United States is a signatory and a party, confirms the Privileges and Immunities afforded to ICAO staff, and acknowledged by the Member States, including the U.S. It states:

> Each contracting State undertakes, so far as possible under its constitutional procedure, to accord to the President of the Organization, <u>and</u> the other personnel of the Organization, the immunities and privileges which are accorded to corresponding personnel of other public international organizations. If a general international agreement on the immunities and privileges of international civil servants is arrived at, the immunities and privileges accorded to the President, the Secretary General, and the other personnel of the Organization shall be the immunities and privileges accorded under that general international agreement.

*See* Exhibit C (emphasis added). Indeed, the privileges and immunities set out in Article 60 are confirmed by the United States, through the IOIA. The U.S. is a signatory and member of both ICAO and the related international agreements. Therefore, there is no question that Mr. Siciliano has the benefit of privileges and immunities, including the rights afforded him as an international civil servant on mission.

## CONCLUSION

For the foregoing reasons, the indictment as it relates to Defendant Siciliano must be dismissed in its entirety.

Dated: March 11, 2015                               NOLAN BARTON BRADFORD & OLMOS LLP


                                                    */s/*
                                                    DANIEL OLMOS
                                                    Attorney for Defendant Mauricio Siciliano